IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 22, 2003 Session

**STATE OF TENNESSEE v. BARRY INMAN**

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-1100-344     Timothy L. Easter, Judge**

---

**No. M2002-02463-CCA-R3-CD - Filed October 17, 2003**

---

The appellant, Barry Inman, was convicted by a jury in the Williamson County Circuit Court of possession of over .5 grams of cocaine with the intent to sell or deliver, possession of Alprazolam with the intent to sell or deliver, possession of marijuana, possession of drug paraphernalia, and speeding. Additionally, the appellant pled guilty to driving on a revoked license. The trial court sentenced the appellant to a total effective sentence of nine years incarceration in the Tennessee Department of Correction. On appeal, the appellant contends that the trial court should have granted his motion for judgments of acquittal and that the evidence adduced at trial was insufficient to sustain his convictions. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY and JAMES CURWOOD WITT, JR., JJ., joined.

Nathaniel H. Koenig, Nashville, Tennessee, for the appellant, Barry Inman.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; Ronald L. Davis, District Attorney General; Mary Katharine White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

The appellant was indicted by a Williamson County Grand Jury on charges of possession of over .5 grams of cocaine with the intent to sell or deliver, possession of Alprazolam with the intent to sell or deliver, possession of dextropropoxyphene with the intent to sell or deliver, possession of marijuana, possession of drug paraphernalia, driving on a revoked licence, and speeding. On May 22 and 23, 2000, a trial was held on these charges.

At trial, Officer Kevin Lovell, of the Williamson County Sheriff's Department, testified that on June 10, 2000, he was traveling north on Temple Road toward Sneed Road and was "running radar." Officer Lovell noticed the appellant traveling at a high rate of speed south on Temple Road in an area near a golf course. Using radar, Officer Lovell clocked the appellant driving fifty miles per hour in an area where the speed limit was thirty miles per hour.

Officer Lovell activated his blue lights and the appellant stopped his vehicle on the side of the road. The officer approached the driver's side of the vehicle and asked the appellant if he knew why he had been stopped. The appellant maintained that he did not. Officer Lovell advised the appellant that he had been speeding and asked for his driver's license and vehicle registration. The appellant informed the officer that he was driving a friend's vehicle. He was unable to produce his driver's license, explaining that he had left his wallet at home. Officer Lovell then asked the appellant for his name, social security number, and date of birth. Upon receiving the information, Officer Lovell returned to his police cruiser to determine the appellant's driver's license number in order to issue him a citation for speeding.

An information check revealed that the appellant's driver's license had been revoked. Upon being confronted by Officer Lovell, the appellant admitted that his license had been revoked. Explaining that he could not allow the appellant to drive the vehicle, Officer Lovell arrested the appellant, placed him in handcuffs, and ordered him to sit in the back of the police cruiser.

Because the appellant had been the sole occupant of the vehicle, Officer Lovell requested that police dispatch send a tow truck to move the vehicle off of the public thoroughfare. Officer Lovell stated that according to police policy, he was required to prepare a "tow sheet," or a record of the inventory that was in the vehicle prior to towing.

Officer Lovell began the inventory on the driver's side of the vehicle. After discovering the appellant's cellular telephone, the officer placed the telephone in the back seat of the cruiser with the appellant. The officer then returned to the vehicle to continue the inventory on the passenger side of the vehicle. Officer Lovell noticed that the glove compartment of the vehicle was ajar and a black camera bag was "jammed" inside, a portion of which protruded from the glove compartment. After some difficulty, Officer Lovell opened the glove compartment and removed the camera bag. Officer Lovell looked inside the compartments of the camera bag to determine the type of camera to record on the tow sheet. Inside the compartments of the camera bag, Officer Lovell discovered a small metal spoon, ninety-four small plastic bags, and electronic scales. Both the scales and the spoon were covered with white powder residue. Additionally, the camera bag contained a substance later determined by the Tennessee Bureau of Investigation crime laboratory to be 4.9 grams of a white powder which did not contain a controlled substance, 9.1 grams of powder cocaine, 2.1 grams of marijuana, and seventy-one pills of Alprazolam, also known as Xanax.[1] Officer Lovell also found a pill bottle in the console between the driver's seat and the front passenger seat. Inside the pill bottle were four pills which later tested positive for dextropropoxyphene, also known as Darvocet.

---

[1] Specifically, there were 51 blue pills and 20 white pills, both of which tested positive as Alprazolam.

Based upon his experience as a police officer, Officer Lovell knew that 9.1 grams of cocaine was an amount greater than that for personal use. He explained that "personal use is a small amount. They use what they have and then they have to go get some more." He also denied that a "junkie" could "freebase" 9.1 grams of cocaine in one night.

Officer Lovell found no other contraband in the vehicle. Officer Lovell explained that he initially charged the appellant with possession of the drugs because the appellant was the sole occupant of the vehicle. He stated that the camera bag looked as if it had been hurriedly shoved inside the glove compartment; therefore, Officer Lovell believed that the appellant knew of the bag and was aware of its contents.

Officer Lovell testified that a video camera in his police cruiser recorded the stop and the search. Moreover, a recording device in the cruiser simultaneously recorded the sounds in the cruiser. After the stop, Officer Lovell watched the tape and noticed that while he was checking the appellant's name and social security number, the appellant repeatedly leaned towards the passenger seat of his vehicle and made a "pushing motion." Officer Lovell stated that the appellant appeared "normal" throughout the incident. However, when reviewing the tape, Officer Lovell noticed that the appellant cursed twice when Officer Lovell began examining the area near the front passenger seat. He observed that it was not unusual for a person to curse when being arrested. Officer Lovell also stated that the appellant did not appear to be in a hurry during the stop.

The tape also revealed that the appellant made a telephone call while he was handcuffed in the back of the patrol car. The appellant called a friend who was waiting at the golf course and asked the friend to drive the vehicle to the clubhouse so it would not be towed. The individual arrived at the scene, but Officer Lovell instructed the individual to leave because the drugs had been discovered.

Officer Lovell admitted that he did not fingerprint any items found in the vehicle. He stated that he was not trained in fingerprinting and could not have performed that function himself. He was not aware of anyone else fingerprinting the vehicle or the items discovered therein. Officer Lovell also did not remember finding any cash on the appellant's person at the time of the arrest. Additionally, Officer Lovell stated that he believed the appellant was wearing sandals at the time of the arrest. He did not remember finding any golf shoes in the vehicle; however, the appellant did have socks in one of the pockets of his pants.

Officer Lovell conceded that he did not personally witness the appellant open the glove compartment or shove the camera bag into the glove compartment. He also acknowledged that the appellant had ample time to carefully place the camera bag in the glove compartment and lock it. However, Officer Lovell noted that the appellant would have attracted his attention if he had taken the time to carefully place the camera bag in the glove compartment.

Andrew Schneider, the owner of the vehicle the appellant was driving, also testified at trial.[2] Schneider stated that the appellant called him on the day in question and asked him to play golf. Schneider declined the invitation. The appellant then asked Schneider to drive him to the golf course, but Schneider did not have time to do so. However, Schneider offered to loan the appellant a vehicle to drive to the golf course. Accordingly, the appellant walked, carrying his golf clubs, to Schneider's house. Schneider gave the appellant the keys to the vehicle and the appellant, in a hurry to make his tee time, put his golf clubs in the trunk of the vehicle and "took off."

Schneider stated that he had never seen the black camera bag that Officer Lovell discovered in the vehicle. Specifically, Schneider had never seen the appellant in possession of the camera bag. However, Schneider admitted that he would not have seen the camera bag if it had been in one of the compartments of the appellant's golf bag. Schneider also noted that on other occasions, three or four other individuals had driven the vehicle that he loaned the appellant. Schneider stated that he did not keep the vehicle locked at his home.

Following the conclusion of the State's proof, the appellant moved for judgments of acquittal on all counts except the driving on revoked license charge. The trial court denied the appellant's motion.

The appellant testified in his own defense and denied his guilt of all offenses except driving on a revoked license. The appellant stated that he was forty-six years old and owned his own wallpaper hanging business. His driver's license had been revoked several years earlier because of a conviction for driving under the influence (DUI).

The appellant testified that on June 10, 2000, he was scheduled to play golf with two friends, John Baker and Todd Dean, at the Temple Hills Club. However, Baker cancelled at 2:30 p.m., shortly before the round was to begin at 3:01 p.m. The appellant then began searching for a third person to play. Accordingly, the appellant called Schneider and invited him to play. Schneider informed the appellant that he did not have time to play golf or to drive the appellant to the golf course, but he offered to loan the appellant a vehicle to drive to the golf course.

The appellant testified that he lived only three blocks from Schneider. He walked to Schneider's house, carrying his golf clubs and a pill bottle containing four Darvocet pills, which had been prescribed for him. The appellant stated that he was wearing loafers and had his socks in his pockets. Upon arriving at Schneider's house, the appellant had a blister on his heel, so he tossed his shoes into the floorboard of the front passenger seat. Schneider gave the appellant the keys to the vehicle and the appellant put his golf clubs in the trunk of the vehicle. The appellant got into the driver's seat and placed the Darvocet, which were in an unmarked pill bottle, in the console of the

---

[2] The trial proceedings in the instant case were recorded on CD-Rom instead of being transcribed by a court reporter. Approximately ten minutes of Schneider's testimony was not recorded because the recording system was not functioning properly. The parties provided no other record as to the content of this missing testimony.

vehicle. The appellant then left for the golf course. The appellant stated that the drive to the golf course usually took approximately fifteen minutes.

The appellant claimed that he was very familiar with the speed limit on the road to Temple Hills and that he would not speed on that road because he frequently saw police stop vehicles in that area for speeding. Additionally, the appellant knew he was committing a crime by driving on a revoked license and did not want to be stopped by police.

Nevertheless, the appellant stated that Officer Lovell stopped him and informed him that he was speeding. When Officer Lovell returned to his cruiser, the appellant called Dean and asked him to postpone their tee time, thinking he would receive only a citation for his violations. However, upon being arrested and placed into the back of the police cruiser, the appellant again called Dean to inform him that the appellant would be unable to play and to ask Dean if he would move Schneider's vehicle so that it would not be towed.

The appellant asserted that he had never seen the black camera bag before it was discovered by Officer Lovell. He stated that he had "trouble believing" that he would not have noticed the camera bag sticking out of the glove compartment, but he did not dispute Officer Lovell's testimony on this issue. The appellant testified that he would not have "set foot" in the vehicle, much less driven it, if he had been aware that there were drugs in the vehicle.

The appellant admitted that he cursed while sitting in the back of the cruiser, but he explained that he did so because he was "steamed" over missing his opportunity to play golf and being arrested. The appellant maintained that while Officer Lovell was checking his information, he repeatedly leaned over towards the passenger side of the vehicle in order to retrieve his shoes, not to shove anything in the glove compartment.

At the conclusion of the appellant's testimony, the appellant again moved for judgments of acquittal and the trial court again denied the motion. The jury found the appellant guilty of possession of over .5 grams of cocaine with the intent to sell or deliver, possession of Alprazolam with the intent to sell or deliver, possession of marijuana, possession of drug paraphernalia, and speeding. The appellant pled guilty to driving on a revoked license. The jury found the appellant not guilty of possession of dextropropoxyphene with the intent to sell or deliver.

After a sentencing hearing, the trial court sentenced the appellant to nine years incarceration for the possession of cocaine conviction; three years incarceration for the possession of Alprazolam conviction; eleven months and twenty-nine days for each of the convictions for possession of marijuana and drug paraphernalia; six months for the driving on a revoked license conviction; and a $50 fine on the speeding conviction. The trial court further ordered that all of the appellant's sentences be served concurrently for a total effective sentence of nine years incarceration.

On appeal, the appellant raises the following issues for our review: (1) whether the trial court erred in denying the appellant's motion for judgments of acquittal at the close of the State's case and,

again, at the conclusion of the trial; and (2) whether the evidence adduced at trial supported the jury's verdicts.

## II. Analysis

Initially, we note that this court has observed that "[t]he standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000). Moreover, "[a] motion for a judgment of acquittal made at the conclusion of the proof by the state is waived when the defendant elects to present evidence on his own behalf." State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); see also Tenn. R. Crim. P. 29(a). Accordingly, we will address the appellant's complaints as a challenge to the sufficiency of the evidence.

When an accused challenges the sufficiency of the evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000).

Moreover, we note that a guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. See State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Furthermore, while a guilty verdict may result from purely circumstantial evidence, in order to sustain the conviction the facts and circumstances of the offense "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the [appellant], and that beyond a reasonable doubt." State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971).

The appellant contests the sufficiency of the evidence as to his drug related convictions only. In order to sustain the appellant's two felony convictions, the State was required to prove that the appellant knowingly possessed a controlled substance with the intent to sell or deliver. See Tenn. Code Ann. § 39-14-417(a)(4) (1997). Specifically, on count one the State accused the appellant of possessing over .5 grams of cocaine, and on count three the State accused the appellant of possessing Alprazolam. As to the misdemeanor convictions, on count four the State needed to prove that the appellant possessed marijuana. See Tenn. Code Ann. § 39-17-418(a) (1997). On count five, it was necessary for the State to prove that the appellant possessed drug paraphernalia, which is defined in part as something used to "process, prepare, test, analyze, pack, repack, store, contain, [or] conceal" a controlled substance. See Tenn. Code Ann. § 39-17-425(a)(1) (1997).

Possession of contraband, such as drugs, can be either actual or constructive. See State v. Transou, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996). As this court explained in State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987) (citations omitted):

> Before a person can be found to constructively possess a drug, it must appear that the person has "the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others." In other words, "constructive possession is the ability to reduce an object to actual possession." The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs.

First, we note that the appellant correctly concedes that "the State has unquestionably proved the existence of the drugs and paraphernalia for which the appellant was convicted." Likewise, the State established that the ninety-four individual plastic bags, electronic scales, and the spoon which were discovered with the drugs were drug paraphernalia. Accordingly, we will address the heart of the appellant's complaints, namely whether the appellant possessed the contested items.

In the instant case, the appellant was in control of the vehicle when the drugs and paraphernalia were discovered. This court has noted that "[k]nowledge may be inferred from control over the vehicle in which the contraband is secreted." State v. Brown, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995). Moreover, such control, coupled with other circumstances, may be an indicator of possession of the contraband. Id.; see also State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). Officer Lovell noted that the videotape of the stop reflected that, when he was checking the appellant's information, the appellant repeatedly leaned towards the front passenger side of the vehicle and "shoved" something in the area of the glove compartment. The appellant also began cursing when the officer began his inventory of the passenger side of the vehicle. Officer Lovell stated that the camera bag appeared to have been hurriedly "jammed" into the glove compartment. Additionally, Schneider, the owner of the vehicle, denied ownership of the contraband. We conclude that a reasonable juror could have found that the foregoing facts demonstrated the appellant's knowing possession of the cocaine, Alprazolam, marijuana, and drug paraphernalia, which items were located in the camera bag.

Next, we must further consider whether the State established that the appellant possessed the cocaine and Alprazolam with the intent to sell or deliver. Tennessee Code Annotated section 39-17-419 (1997) provides that "[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." The appellant possessed 9.1 grams of cocaine, which amount Officer Lovell maintained was greater than one would possess for personal use. The appellant also possessed seventy-one Alprazolam pills.

Officer Lovell explained that the electronic scales and the spoon which were discovered in the vehicle could be used to measure controlled substances for individual sale and both were covered in a white powder residue. Additionally, the officer discovered ninety-four small plastic bags which could be used to package individual items, such as drugs, for sale. Thus, we conclude that the State sufficiently proved that the appellant possessed the cocaine and Alprazolam with the intent to sell or deliver. See State v. Larenzo Deshawn Harris, No. W2001-02626-CCA-R3-CD, 2002 WL 31259491, at *5 (Tenn. Crim. App. at Jackson, Aug. 30, 2002), perm. to appeal denied, (Tenn. 2002); State v. Clarence Boling, No. E2000-01985-CCA-R3-CD, 2001 WL 839365, at *3 (Tenn. Crim. App. at Knoxville, July 25, 2001).

### III.  Conclusion

Based upon the foregoing, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE