IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 12, 2000 Session

## STATE OF TENNESSEE v. BILLY THOMPSON

**Direct Appeal from the Criminal Court for Shelby County
No. 98-06377-78    James C. Beasley, Jr., Judge**

_____

**No. W1999-01001-CCA-R3-CD - Filed December 15, 2000**

_____

In 1995, Billy Thompson, a Mississippi resident, was convicted in Shelby County of driving under the influence, resulting in suspension of his driving privileges in this state for one year. Fifteen months later, Thompson was again charged and convicted of driving under the influence, sixth offense, reckless driving and driving while revoked, being the instant offenses before this court. On the date of the latter offenses, Thompson possessed a valid Mississippi driver's license, however, he had not complied with the statutory requirements for reinstatement of his driving privileges in this state. Thompson appeals his convictions contending the trial court erred (1) by failing to sever the charge of driving while license revoked from the remaining counts and (2) by failing to grant his motion for judgment of acquittal as to the charge of driving while license revoked. We conclude that all charges were properly joined pursuant to Tenn. R. Crim. P. 8(a). Moreover, we hold that a nonresident motorist, although possessing a valid out-of-state license, may not operate a motor vehicle in this state following this state's revocation of his driving privileges until the motorist complies with Tennessee's reinstatement procedures. Because we find the proof sufficient to support the challenged conviction, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

James D. Franks, Hernando, Mississippi, and S. Ronald Lucchesi, Memphis, Tennessee, for the Appellant, Billy Thompson.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, J. Ross Dyer, Assistant Attorney General, Wlliam L. Gibbons, District Attorney General, and Paula Wulff and Reginald Henderson, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

The Appellant, Billy Thompson, was convicted by a Shelby County jury of driving while license revoked (DWLR), driving under the influence, sixth offense, and reckless driving. The trial court imposed respective sentences of eleven months, twenty-nine days for driving under the influence, six months for reckless driving, and a five hundred dollar fine for DWLR. The sentences for driving under the influence and reckless driving were ordered to be served consecutively. In this appeal as of right, the Appellant raises two issues for this court's review:

I. Whether the trial court's denial of the Appellant's motion to sever the charge of driving on a revoked license from the charges of driving under the influence and reckless driving was error; and

II. Whether, as a matter of law, the Appellant's driving privileges in the State of Tennessee were automatically reinstated as evidenced by his procurement of a valid Mississippi license after the expiration of the one-year Tennessee revocation period.

After review, we affirm.

**Background**

Shortly before noon on July 8, 1997, Memphis Police Officer Dorothy Hyman was on patrol on Interstate 55 "running radar" on northbound traffic. Officer Hyman was approached by a motorist who informed her that "there was a truck traveling southbound on 55 running off the road. . . ." Officer Hyman, soon thereafter, observed "a tan and brown looking truck coming southbound; and he was all over the road. And there was traffic backed up behind him so badly and cars were trying to get around him." "[T]here was [sic] people running off the road trying to avoid being hit by this vehicle that was all over the road."

After a short pursuit, Officer Hyman stopped the vehicle. Upon approaching the driver's side of the truck, Officer Hyman immediately noticed a strong odor of alcohol emanating from the driver, subsequently identified as the Appellant. Two bottles of alcohol were discovered in the truck. Additionally, both the Appellant's physical appearance and his behavior indicated that the Appellant was under the influence of an intoxicant. A DUI unit was dispatched to the scene. The Appellant refused to submit to both a field sobriety test and a breathalyzer test.

The Appellant, a Mississippi resident, was in possession of a valid Mississippi license, which had been issued only several hours before his arrest. At the time of his arrest, his Tennessee driving privilege was suspended, effective March 23, 1995. Following a jury trial, the Appellant was found guilty of driving under the influence, sixth offense, reckless driving, and driving while revoked.

## I. Severance

On May 20, 1998, the Shelby County Grand Jury returned two indictments against the Appellant. The Appellant was charged in one indictment with one count of driving while license revoked; the remaining indictment charged the Appellant with one count of driving under the influence, sixth offense, and one count of reckless driving. Apparently, the two indictments were joined pursuant to Tenn. R. Crim. P. 8(a). Prior to trial, the Appellant moved to sever the charge of driving while license revoked from the charges of driving under the influence and reckless driving due to the prejudicial impact of the "pre-textual charge of driving while license suspended." The trial court denied the motion.

The Appellant now contests this ruling, relying solely upon this court's holding in State v. Fleece, 925 S.W.2d 558 (Tenn. Crim. App. 1995). We do not find this court's prior holding dispositive of the issue *sub judice*. In Fleece, the defendant was charged with driving under the influence and reckless driving; he was not charged with driving on a restricted license. A panel of this court held that evidence of the defendant's restricted license before the jury was error under Tenn. R. Evid. 404(b). Fleece, 925 S.W.2d at 561. This is not the issue presently before this panel.

On appellate review, this court will not reverse a trial court's decision concerning permissive joinder and severance of offenses pursuant to Tenn. R. Crim. P. 8 and 14 absent an abuse of the trial court's discretion. See Spicer v. State, 12 S.W.3d 438, 442-443 (Tenn. 2000) (citing State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999)). Accordingly, this court will not interfere with a trial court's ruling unless the "court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." Id. (citations omitted).

The indictments in the present case were joined pursuant to Tenn. R. Crim. P. 8(a), requiring mandatory joinder of offenses where the offenses are based upon the same conduct or arise from the same criminal episode. Notwithstanding mandatory joinder, the trial court retains discretion to grant a severance of the offenses under some circumstances. See Shirley, 6 S.W.3d at 246, n.3. Rule 14(b)(2) provides for severance of charges joined under Tenn. R. Crim. P. 8(a):

> (i) If before trial on motion of the state or the defendant it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense.
>
> (ii) If during trial with consent of the defendant it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. The court shall consider whether, in light of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.
>
> (iii) If the Court finds merit in both a motion by the district attorney general for a continuance based upon exigent circumstances that temporarily prevent the state

from being ready for trial of the joined prosecutions and an objection by the defendant to the continuance based on a demand for speedy trial. . . .

Tenn. R. Crim. P. 14(b)(2). The trial court's refusal to grant a severance under Tenn. R. Crim. P. 14(b)(2) will not be reversed unless the Appellant was prejudiced by the decision to try the charges together. State v. Wiseman, 643 S.W.2d 354, 362 (Tenn. Crim. App. 1982). We conclude from the evidence contained in the record that the Appellant suffered no prejudice from the joinder of the offenses. Accordingly, we find that the trial court did not abuse its discretion in denying severance of the offenses. This issue is without merit.

## II. Revocation of Non-Resident Driving Privileges

There is no dispute that, effective March 23, 1995, the State of Tennessee revoked the Appellant's privilege to drive a motor vehicle upon the highways of this state for a period of one year. At this time, the appellant was a Mississippi resident and possessed a Mississippi driver's license. The revocation period in Tennessee expired on March 23, 1996. On July 8, 1997, the Appellant obtained a valid driver's license from the State of Mississippi, his state of residency. The Appellant's arrest on the instant offenses occurred on July 8, 1997, one year, three months and ten days after the expiration of his revocation period.

At the conclusion of the State's proof on this charge, the Appellant moved for a judgment of acquittal as to this count. The trial court denied the motion and, subsequently, the jury returned a guilty verdict as to the charge of driving while license revoked. The Appellant now contends that the trial court erred in denying his motion for judgment of acquittal as to this count. Specifically, he asserts that the revocation period expired on March 23, 1996, and he had obtained a valid Mississippi driver's license on July 8, 1997. Accordingly, he argues his Tennessee driving privileges had been automatically reinstated at the expiration of the revocation period. The State responds that a nonresident's driving privilege is not automatically reinstated in this State at the expiration of the revocation period or upon issuance of a valid driver license from his home state. Rather, the nonresident driver must satisfy certain reinstatement procedures before his driving privileges in this state may be reinstated. In rebuttal, the Appellant asserts that, if any affirmative acts are required by a nonresident prior to reinstatement of Tennessee driving privileges, "there exists no case law, no statutory law, and no published guidelines from the State of Tennessee advising anyone who is a non-resident of the State of Tennessee that they must perform any acts in order to reinstate their Tennessee driving privileges."

The standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction; that is, whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Gillon, 15 S.W.3d 492, 496 (Tenn. Crim. App. 1997) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781 (1979)). After a conviction, the State is entitled to the strongest legitimate view of the evidence and

any reasonable inferences which might be drawn therefrom. <u>Id.</u> (citing <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978)).

A motion for judgment of acquittal presents a question of law. <u>Gillon</u>, 15 S.W.3d at 496 (citing <u>State v. Hall</u>, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983)). The trial judge is concerned only with the "legal sufficiency of the evidence and not with the weight of the evidence." <u>Id.</u> (citations omitted). The evidence must be viewed in the light most favorable to the State. <u>Id.</u> "An appellate court must apply the same standard as a trial court when resolving issues predicated upon the grant or denial of a motion for judgment of acquittal." <u>Id.</u>

> A person who drives a motor vehicle on any public highway of this state at a time when the person's privilege to do so is cancelled, suspended, or revoked commits a Class B misdemeanor. A person who drives a motor vehicle on any public highway of this state at a time when the person's privilege to do so is cancelled, suspended or revoked because of a conviction for . . . driving while intoxicated, shall be punished by confinement for not less than two (2) days nor more than six (6) months, and there may be imposed, in addition, a fine of not more than one thousand dollars ($1,000).

TENN. CODE ANN. § 55-50-504(a)(1) (Supp. 1997). There is no dispute that the Appellant was operating a motor vehicle on the public highways of this state. The only question is whether the Appellant's driving privileges were suspended at the time of the incident.

The ability to drive a motor vehicle on a public highway is not a fundamental "right." <u>State v. Booher</u>, 978 S.W.2d 953, 956 (Tenn. Crim. App. 1997) (citing <u>Goats v. State</u>, 211 Tenn. 249, 364 S.W.2d 889, 891 (Tenn. 1963); <u>Sullins v. Butler</u>, 175 Tenn. 468, 135 S.W.2d 930, 932 (Tenn. 1940) (citations omitted)). Instead, it is a revocable "privilege" that is granted upon compliance with statutory licensing procedures. <u>Booher</u>, 978 S.W.2d at 956 (citing <u>Reitz v. Mealey</u>, 314 U.S. 33, 36, 62 S. Ct. 24, 26-27 (1941), <u>overruled in part by</u>, <u>Perez v. Campbell</u>, 402 U.S. 637, 91 S. Ct. 1704 (1971); <u>Goats</u>, 364 S.W.2d at 891; <u>Sullins</u>, 135 S.W.2d at 932). Generally, a nonresident of the State of Tennessee who possesses a valid driver license from his home state has the privilege to drive on Tennessee highways and is exempt from Tennessee licensing provisions. <u>See</u> TENN. CODE ANN. § 55-50-304(3), (4) (Supp. 1997). <u>See also</u> Tenn. Op. Atty. Gen. No. 83-411 (Sept. 15, 1983). The privilege of driving on Tennessee highways is not absolute; rather, just as a *resident's license to drive* a motor vehicle in the State of Tennessee may be revoked, a *nonresident's privilege to drive in this state may likewise be revoked.*[1] <u>See generally</u> TENN. CODE ANN. § 55-50-502(d)(2) (Supp. 1997). Additionally, just as a resident's license is not automatically restored at the expiration of the revocation period, <u>see generally</u> TENN. CODE ANN. § 55-50-502, the suspension of a nonresident's privilege to operate a motor vehicle on the highways of this state "does not automatically spring to life at the end of the period of ineligibility, as if the order never had been entered. . . ." <u>See</u>

---

[1]The authority of this state over a nonresident is limited to the driver's privilege to operate a motor vehicle on the public highways of *this state*. Obviously, no administrative agency nor court of this state has the authority to prevent a nonresident from operating a motor vehicle in his home state or any other state.

Colorado Dept. of Revenue, Motor Vehicle Div. v. Smith, 640 P.2d 1143, 1145 (Colo. 1982) (*en banc*) (quoting People v. Lessar, 629 P.2d 577 (Colo. 1981)); see also State v. Banicki, 933 P.2d 571, 573 (Ariz. App. 1997) (driving privileges not automatically restored). The completion of the period of revocation merely makes the nonresident driver eligible for reinstatement of his Tennessee driving privileges. See TENN. CODE ANN. § 55-50-502(d)(1); -(e)(3); see also Tenn. Op. Atty. Gen. No. 86-097 (May 19, 1986) ("[o]nce a license or driving privileges have been suspended under this chapter, the motorist may restore his privileges by satisfying certain requirements which usually include the payment of a restoration fee."). Indeed, while a nonresident holding a valid out-of-state driver license need not obtain a valid Tennessee driver license to comply with reinstatement requirements following a suspension, he is obligated to "make application . . . as provided by law, but the department shall not issue a new license unless and until it is satisfied after investigation of the character, habits and driving ability of such person that it will be safe to grant the privilege of driving a motor vehicle on the public highways." See TENN. CODE ANN. § 55-50-502(e)(3). Additionally, our law provides:

> (b)(1) In addition to all other requirements of law, prior to reinstating the driving privileges and/or reissuing a driver license to any person who has been convicted of the offense of driving while under the influence, **the department shall require certification that all fines and costs have been paid to the court of jurisdiction.** Such certification shall be made upon a form supplied by the department and shall indicate the fines and costs levied by the court, that all fines and costs have been paid to the court, or that the fines and/or costs were waived as a result of the person being found to be indigent by the court, if such court is located within this state. The form shall be completed and certified by the clerk of the court of jurisdiction; however, **it is the sole responsibility of the individual seeking reinstatement or reissuance to obtain the certification and present it to the department.**

> (b)(2) Persons convicted of any other offense requiring mandatory revocation of driving privileges shall be required to present the same certification in subdivision (b)(1) prior to reinstatement of driving privileges and/or the reissuance of a driver license.

TENN. CODE ANN. § 55-50-303(b) (Supp. 1997)(emphasis added).

Under Tennessee's statutory requirements, a nonresident whose Tennessee privilege to drive has been suspended is not extended the privilege to drive in Tennessee until the period of suspension has expired and the nonresident has complied with the reinstatement procedures even though he is in possession of a valid driver license issued by his state of residence. There is no proof that the Appellant complied with the reinstatement procedures. Indeed, the proof introduced revealed that the Appellant's driving privilege in this state was suspended. Absent proof of compliance with reinstatement procedures, the evidence is sufficient to support a conviction for driving while license revoked. Accordingly, we conclude that the trial court properly denied the Appellant's motion for judgment of acquittal.

After review of the record, we affirm the judgments of conviction entered by the trial court.

_____
DAVID G. HAYES, JUDGE