# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 5, 2005 Session

## STATE OF TENNESSEE v. DARRYL AMMONS

### Direct Appeal from the Circuit Court for Dickson County
No. CR 6686 George Sexton, Judge

---

### No. M2004-01956-CCA-R3-CD - Filed June 9, 2005

---

The defendant, Darryl Ammons, was indicted and tried for one count of attempt to commit first degree murder and aggravated assault. He was subsequently convicted by a jury of attempted criminally negligent homicide and aggravated assault. The trial court merged the conviction for attempted criminally negligent homicide into the conviction for aggravated assault and sentenced the defendant to ten years as a Range II multiple offender. Upon review, we vacate the defendant's conviction for attempted criminally negligent homicide but affirm his conviction for aggravated assault.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part and Affirmed in Part**

J.C. McLin, J., delivered the opinion of the court, in which David H. Welles and James Curwood Witt, Jr., JJ., joined.

Michael J. Flanagan, (on appeal) Nashville Tennessee, and James O. Martin, (at trial) Nashville, Tennessee, for the appellant, Darryl Ammons.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Suzanne Lockert, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Facts

The State's proof at trial established that the defendant lived with his ex-wife, Charlotte Ammons, in her residence in White Bluff, Tennessee. Also living with the defendant at the time was Ms. Ammons' daughter, Michaela. On the evening of April 21, 2003, after eating dinner and drinking alcohol, the defendant and Ms. Ammons began to argue over NASCAR gifts the defendant was receiving from another woman. As the argument continued, the defendant announced he was

leaving. Before the defendant left the house, Ms. Ammons asked for a cell phone she lent to the defendant. When he refused to give the phone back, Ms. Ammons followed him outside of the house in attempt to retrieve it.

Michaela, alarmed by the shouting, walked to the front door to see what was happening. As she watched her mother and the defendant argue she heard her mother say "if you're going to shoot me, Darryl, shoot me." Michaela saw the defendant push her mother to the ground. In response, her mother told Michaela to call 911. Michaela ran to the bathroom to hide; she tried to call 911 but could not because the phone was not working properly.

Meanwhile, an altercation ensued between the defendant and Ms. Ammons. The defendant pushed Ms. Ammons to the ground a couple of times, and the two began to wrestle. At this point, the defendant went to his truck and retrieved a gun. Seeing the defendant with a gun, Ms. Ammons made the statement "if you're going to shoot me just shoot me," which her daughter heard before running to hide. In response, the defendant shot Ms. Ammons in the elbow. Ms. Ammons, bleeding, asked the defendant for help, but the defendant ignored her, got into his truck and left.

After hearing the gunshot, Michaela heard her mother's voice in the kitchen. Her mother asked her if she had called the police. Michaela told her mother that she had tried, but the phone was not working. Her mother told her to get help from the neighbors next door.

Phyllis Wills and Robert Larrentree lived next door to Ms. Ammons. Around 10:00 p.m. Ms. Wills answered a phone call from the Ammons residence, but no one was on the other line. After waiting a couple minutes, she called back but the line was busy. Shortly thereafter, she heard a gunshot. Peering out her window, Ms. Wills noticed the defendant leave in his truck. Upon seeing Michaela run to her house, Ms. Wills called 911. Ms. Wills comforted Michaela by wrapping her in a blanket. She then walked over to the Ammons residence to see if Ms. Ammons needed help. Ms. Wills found Ms. Ammons in Michaela's bedroom on the phone with a 911 dispatcher. Ms. Wills helped "pack" Ms. Ammon's arm in order to stop the bleeding.

According to Ms. Wills, a couple days before the shooting, Ms. Ammons called her and threatened to kill herself. Ms. Ammons was depressed because the defendant had walked out on her. Ms. Wills walked over to the Ammons residence and found Ms. Ammons sitting in her kitchen holding a gun. After some discussion, Ms. Wills convinced Ms. Ammons to give her the gun, whereupon Ms. Wills took it and placed in the trunk of her car. The next day, Ms. Ammons called Ms. Wills and asked her to return the gun to the defendant who had come back to the house. Ms. Wills walked over to the house and gave the gun to the defendant who appeared surprised when Ms. Wills handed the gun to him.

After Ms. Ammons was shot, she was taken to a hospital for surgery. Dr. Kevin Hagan treated Ms. Ammon's injuries. Dr. Hagan noted that Ms. Ammons received a gunshot wound to the elbow region of her right arm, which resulted in disfigurement and nerve damage. Dr. Hagan did not believe that the wound was self-inflicted because Ms. Ammons was right-handed, the bullet

wound was to her right elbow region, and some of the bullet's casing was found buried in her right armpit. Dr. Hagan believed that considering the physical aspects of Ms. Ammon's wounds, it would have been very difficult for her to shoot herself. Dr. Hagan also noted that the emergency room report indicated the presence of alcohol in Ms. Ammons.

Following the State's proof, the defendant moved for judgment of acquittal, which was denied. After being charged by the trial court, the jury deliberated and found the defendant guilty of attempt to commit criminally negligent homicide and aggravated assault. The trial court merged the conviction in count one for attempted criminally negligent homicide into count two for aggravated assault and sentenced the defendant to ten years as a Range II multiple offender. The defendant renewed his motion for judgment of acquittal and filed a motion for a new trial. Both motions were denied. Thereafter, the trial court reduced the defendant's sentence to nine years.

## II. Analysis

On appeal, the defendant contends that the trial court erred in not granting judgment of acquittal. In making his argument, he relies on State v. Kimbrough, 924 S.W.2d 888 (Tenn. 1996) to argue that his conviction for attempt to commit criminally negligent homicide is not a viable offense in Tennessee and must be vacated. The defendant further argues that because the jury specifically acquitted him of attempted first and second degree murder and attempted voluntary manslaughter – each offense requiring intentional or knowing conduct – the trial court erred in not acquitting the defendant of his aggravated assault conviction, which also requires intentional or knowing conduct. The State concedes in its brief that, based on the holding in Kimbrough, the defendant's conviction for attempted criminally negligent homicide must be vacated. However, the State argues that the jury's conviction for attempted criminally negligent homicide, albeit erroneous, did not preclude the jury from concluding that the defendant was guilty of aggravated assault.

This Court has previously observed that "[t]he standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000). Therefore, we address the defendant's arguments under a sufficiency of evidence standard of review.

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this Court why the evidence will not support the jury's verdict. State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "reasonable trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R.App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). The State is

entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. Carruthers, 35 S.W.3d at 558; Tuggle, 639 S.W.2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this Court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002); Bland, 958 S.W.2d at 659. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. See State v. Elkins, 102 S.W.3d 581, 582 (Tenn. 2003); Reid, 91 S.W.3d at 277.

## A. Attempted Criminally Negligent Homicide

Initially, we agree with the first part of the defendant's argument that his conviction for attempt to commit criminally negligent homicide must be vacated. Criminally negligent homicide can be described as follows: A person commits criminally negligent homicide when his conduct or the result of that conduct causes the death of another person, and by his conduct it is evident that he failed to perceive a substantial and unjustifiable risk that a result would occur (namely, death). "The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." Tenn. Code. Ann. §§ 39-11-106(a)(4) & 302(d).

Criminal attempt is defined by Tenn. Code. Ann. § 39-12-101, which states:

A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

In State v. Kimbrough, our supreme court analyzed whether the crime of felony murder could provide a foundation for criminal attempt liability. The court held that attempted felony murder is not a cognizable crime in Tennessee. Id. at 892. The court reasoned that criminal intent requires specific intent whereas the crime of felony murder requires only recklessness. Id. at 891. The court stated that it was "impossible to conceive of an attempt where a crime by definition may be committed negligently or recklessly but not intentionally." Id. The court concluded that an offense of attempted felony murder would require an actor to intend to commit an unintentional act. Id. at 892.

Based upon the supreme court's analysis in <u>Kimbrough</u>, this Court has consistently held that attempt to commit criminally negligent homicide is not a recognized crime in Tennessee. <u>See</u> <u>e.g.</u>, <u>State v. John Mark Burns</u>, No. W2003-01464-CCA-R3-CD, 2004 WL 2108236, at *6 (Tenn. Crim. App., at Jackson, Sept. 21, 2004); <u>State v. Maurice Lamont Davidson</u>, No. M2002-00178-CCA-R3-CD, 2003 WL 151202, at *4 (Tenn. Crim. App., at Nashville, Jan. 22, 2003), <u>perm app. denied</u> (Tenn. May 19, 2003); <u>State v. Christopher Todd Brown</u>, No. M1999-00691-CCA-R3-CD, 2000 WL 262936, at *2 (Tenn. Crim. App., at Nashville, March 9, 2000), <u>perm. app. denied</u> (Tenn. Sept. 10, 2001); <u>State v. Dale Nolan</u>, No. 01C01-9511-CC-00387, 1997 WL 351142, at *9 (Tenn. Crim. App., at Nashville, June 26, 1997), <u>perm. app. denied</u> (Tenn. March 2, 1998). Our rationale is simple. To be guilty of an attempt crime, an actor must have the specific intent to commit the underlying offense. For example, the mental states involved with first and second degree murder (intentional and knowing) involve a level of conscious awareness and volitional affirmative conduct. For a homicide offense based upon the mental state of criminal negligence, the actor is charged for acting without awareness, or in other words, the actor is charged with failing to perceive that his conduct involves a substantial and unjustified risk of death. Thus, attempted criminally negligent homicide is not a cognizable crime in Tennessee because criminal negligence does not meet the conscious mental state required for an attempt crime. As the <u>Kimbrough</u> court explained, "one cannot intend to accomplish the unintended." <u>Id.</u> at 892. Consequently, we conclude that the defendant's conviction for attempted criminally negligent homicide must be vacated.

### B. Aggravated Assault

As to the defendant's argument that the trial court should have acquitted him of his aggravated assault conviction in light of his conviction for attempt to commit criminally negligent homicide, we disagree. In the instant case, the State chose to indict the defendant on two separate counts: attempted first degree murder and aggravated assault. Criminal homicide is generally defined as the unlawful killing of another person and may be classified as first degree murder, second degree murder, voluntary manslaughter, criminally negligent homicide, or vehicular homicide. <u>See</u> Tenn. Code Ann. § 39-13-201. As previously indicated, an attempt crime requires one to act with the intent to cause a result that is an element of the offense. <u>See</u> Tenn. Code Ann. § 39-12-101. Aggravated assault is an intentional or knowing assault resulting in serious bodily injury or accomplished through the use or display of a weapon. <u>See</u> Tenn. Code Ann. § 39-13-102(a)(1). Pursuant to Tennessee law, aggravated assault is not a lesser included offense of the charged offense of attempt to commit first degree murder. <u>See</u> <u>State v.Trusty</u>, 919 S.W.2d 305, 311-312 (Tenn. 1996), <u>overruled on other grounds by</u> <u>State v. Dominy</u>, 6 S.W.3d 472, 475 (Tenn. 1999); <u>see also</u> <u>State v. George Lebron Johnson</u>, No. E2004-00834-CCA-R3-CD, 2005 WL 468503, at *2 (Tenn. Crim. App., at Knoxville, March 1, 2005); <u>Crenshaw v. State</u>, No. M2004-00045-CCA-R3CD, 2004 WL 2984856, at *7 (Tenn. Crim. App., at Nashville, Dec. 16, 2004); <u>State v. Joshua Lee Williams</u>, No. W2000-01435-CCA-R3-CD, 2001 WL 721056, at *6 (Tenn. Crim. App., at Jackson, June 27, 2001), <u>perm app. denied</u> (Tenn. Oct. 29, 2001); <u>Brown</u>, 2000 WL 262936, at *2.

After considering the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of aggravated assault beyond a reasonable doubt. At trial, the evidence established that the defendant retrieved a gun from his truck and shot Ms. Ammons in the elbow. This evidence clearly supports all the necessary elements for the defendant's aggravated assault conviction. Moreover, the jury's finding that the defendant's conduct did not support his attempted murder charge did not preclude them from finding the defendant guilty of aggravated assault. Accordingly, this issue is without merit.

### III. Conclusion

Based upon the foregoing authorities and reasoning, the defendant's conviction for attempt to commit criminally negligent homicide is vacated. However, the defendant's conviction and sentence is, in all other respects, affirmed.

_____
J.C. McLIN, JUDGE