# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 18, 2012 Session

## STATE OF TENNESSEE v. LARRY WAYNE WEBB

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2010-C-2769     Cheryl Blackburn, Judge**

**No. M2011-02412-CCA-R3-CD- Filed September 6, 2012**

A Davidson County Criminal Court Jury convicted the appellant, Larry Wayne Webb, of theft of property valued $1,000 or more but less than $10,000, a Class D felony, and the trial court sentenced him as a Range IV, career offender to twelve years.  On appeal, the appellant contends, and the State concedes, that the evidence is insufficient to support the conviction. Based upon the oral arguments, the record, and the parties' briefs, we agree that the evidence is insufficient.  Therefore, the conviction is reversed, and the charge is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed, and the Case is Dismissed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

James O. Martin, III (on appeal), and Manuel B. Russ (at trial), Nashville, Tennessee, for the appellant, Larry Wayne Webb.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Stacey Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In September 2010, the Davidson County Grand Jury indicted the appellant for three counts of felony theft.  Count 1 alleged that the appellant knowingly exercised control over a truck valued $10,000 or more but less than $60,000, without the effective consent of the owner, Gordon Frank Harris, with the intent to deprive Harris of the property.  Count 2

alleged that the appellant knowingly exercised control over cash valued $500 or more but less than $1,000 without Harris's effective consent with the intent to deprive Harris of the property. Count 3 alleged that the appellant exercised control over cash valued $1,000 or more but less than $10,000 without the effective consent of the owner, Shrum's Auto Salvage, with the intent to deprive Shrum's of the property. All of the thefts allegedly occurred on April 23, 2010.

At trial, Gordon Frank Harris of Sylvester, Georgia, testified that he owned Horse Creek Equipment Company and bought and sold heavy equipment, including trucks. He said that he had known the appellant seven or eight years and that they had bought and sold heavy equipment together during that time. In early 2010, Harris bought three dump trucks. Two of the trucks were in Alabama, and one was in Nashville. Harris said that the Nashville truck was a 1989 or 1990 Mack truck and that he purchased it "sight unseen" from Truck Center Incorporated in Nashville for $5,000. Harris said that the appellant "cut a deal" with Arthur Trovei & Sons in New York to buy the three trucks for $42,000. On February 5, 2010, Arthur Trovei & Sons wired the money to Harris's bank, and the bank deposited the money into Harris's account. Later that day, Harris wired $5,000 to Truck Center Incorporated to pay for the Nashville truck. Harris said he also wired $1,000 to the appellant as a partial payment for "[the appellant's] half of the deal." Harris said he and the appellant always split their profit from a business deal equally. He said that on February 6, 2010, the appellant came to Sylvester, Georgia, and he gave the appellant a check for $5,414, which "would have wound it up."

Harris testified that the appellant was supposed to get the three trucks delivered to Arthur Trovei in New York. However, Harris ended up paying a company to deliver the two Alabama trucks. He also learned the Nashville truck was inoperable. The appellant had repaired trucks previously and was going to repair the Nashville truck but needed to buy parts. On March 11, 2010, Harris wired $500 to the appellant for the parts. On March 16, 2010, Harris wired more money to the appellant for additional parts. Harris said that on March 22, 2010, the appellant still had not repaired the truck, so Harris sent a refund to Arthur Trovei & Sons for the Nashville truck because "that truck was dead in the water." Harris said that at some point, the appellant told him that the truck was "running" but needed tires. Later, Harris tried to get in touch with the appellant, but the appellant did not answer his telephone. Harris said he became "super, super mad" at the appellant and began looking for the truck. On April 27, 2010, he found it at Shrum's Auto Salvage in Davidson County. Employees at Shrum's gave paperwork to Harris, showing that Shrum's had purchased the truck from the appellant.

Harris testified that later that day, he contacted the police, spoke with an officer, and obtained a warrant for the appellant's arrest. The police found the appellant, arrested him,

and put him in jail. At that point, Harris no longer had contact with him. Harris said that he had told the appellant to sell the truck but that he never gave the appellant permission to sell it to Shrum's. He said that he had thought the appellant's father, Wayne Webb, was going to buy the truck and that he did not know the appellant was going to sell the truck "at scrap price." According to Harris, the truck was returned to him, and he sold it to the appellant's father.

On cross-examination, Harris testified that he had conducted business with the appellant for ten or eleven years and that they had done deals together worth several million dollars. He acknowledged that when he and the appellant entered into a business venture, they were partners. After the sale of the Nashville truck to Arthur Trovei & Sons fell through, Harris began trying to sell the truck to someone else. He said, "I didn't care who bought it." He acknowledged that he told the appellant to "get rid" of the truck and that he told Wayne Webb the same thing. Harris had expected to recoup the $5,000 he paid for the truck. However, the amount Shrum's paid the appellant would not have fully compensated Harris.

Harris testified that after he spoke with the police, the police found the appellant at a motel and arrested him. The appellant's pickup truck also was at the motel. Harris looked inside the pickup truck and saw the parts for which he had paid. He also saw a cashier's check for $5,000 made payable to the appellant. Harris took the parts out of the appellant's truck. When Wayne Webb bought the Nashville truck from Harris, Harris gave the parts to Webb. He acknowledged that he was angry when he found out the appellant had sold the truck to Shrum's but that the appellant had permission to dispose of the truck. He acknowledged that he would do business with the appellant again.

On redirect examination, Harris stated, "I got mad, you know. I did something in haste that I probably shouldn't have done. And that was having Larry arrested. I realize that now." He said that the appellant was a good mechanic and that the appellant had repaired inoperable equipment they had purchased together previously. He stated that he did not give the appellant permission to sell the truck to a salvage yard but that "I told him to sell my truck and get my money back. Probably not in those words. There was probably cuss words in there, too. But I wanted my money back." Several months after the appellant's arrest, Harris learned that the appellant had planned to give him the $5,000 check he had seen in the appellant's pickup truck. Harris said that he had a "bad temper" and that "I acted in haste when I had him locked up. Had he answered that phone he wouldn't be sitting . . . in this court. That's the honest to God truth now."

Harris acknowledged that he testified at the appellant's preliminary hearing on May

20, 2011.[1]  The State asked him, "What facts from when you testified on May 20th, 2011, -- what facts are different from that day . . . as to the permission you gave Mr. Larry Webb?" Harris answered, "Counselor, things that I didn't know that happened after the fact.  That's what changed."  Specifically, Harris found out several months after the appellant's arrest that the appellant was going to give him the $5,000 cashier's check.  At that point, he no longer wanted to help the State prosecute the appellant.

Cathy Cheeves, an employee for AB Collier Wrecker Service, identified a tow invoice from her company.  The invoice showed that on April 23, 2010, the company towed a Mack truck for the appellant from the Waffle House on Dickerson Road to Shrum's Auto Salvage. On cross-examination, Cheeves testified that salvage yards usually did not ask for a vehicle title for a vehicle that was at least ten years old.

Stephen Lyle Taylor, the Manager for Shrum's Auto Salvage, testified that on April 23, 2010, Shrum's bought a dump truck from the appellant for $1,083.20.  On cross-examination, Taylor testified that the day before the sale, the appellant spoke with him over the telephone and asked if Shrum's would buy the truck.  Taylor said the appellant told him the truck "didn't run" and would have to be towed to the salvage yard.  Taylor said that he was unaware the appellant did not own the truck and that "Mr. Webb told me it was his truck."  Taylor said Shrum's would not have bought the truck if he had known the appellant did not own it or have permission to sell it.   After Shrum's bought the truck, the truck was reported stolen.  Taylor spoke with the appellant's father, and the appellant's father bought the truck from Shrum's for the same amount Shrum's paid the appellant.   Taylor acknowledged that Shrum's did not lose any money.

Officer Conrad Straub of the Metropolitan Nashville Police Department testified that on April 27, 2010, he was dispatched to meet Gordon Harris and that Harris told him about the situation with the appellant.  Officer Straub helped Harris obtain warrants for the appellant's arrest. On cross-examination, Officer Straub acknowledged that he did not speak with the appellant.

The State played for the jury an audio-recorded telephone conversation between the appellant and his mother on January 12, 2011.  During the call, the appellant said he was going to mail his father "that paperwork . . . for [Harris]" and that he did not want his father to give Harris anything until his father talked to Harris "face to face."  He also stated, "I want daddy to look him in the eye and then pay him what he owed him and say here's the deal. .

---

[1]We note that a transcript of the hearing was not admitted into evidence at trial but is in the appellate record as an exhibit for a pretrial hearing.  According to the transcript, the appellant's pretrial hearing was on May 20, 2010.

. . Now here's the deal, whatcha going to do?" The appellant also told his mother the following:

> I don't want to tear up Frank's ass if I don't have to. Now I'm going to have to do one or the other. I'm going to have to make a decision before long. You know I've got to tear his computer apart and I'm going to have to tell them, Nancy and all of them down there and I really don't want to do that. I really, I really don't want to mess Frank up, but I can. I really don't have the heart to do it, but . . . I'm going to have the heart, I tell you that.

> You know, but I really don't want to do that mama. I mean Frank really, I mean I can understand him being a little mad. But, but he went, he went to extremes after all we've been through and after all we'd done. But a lot of times I've owed him $15,000 to $20,000 or he owed me or I've borrowed it from him, or he borrowed it from me. And for what he done I don't understand it. So I don't know if he's calmed down or he's got madder or he just wants his money and go on about his business or what.

At the close of the State's proof, the appellant moved for judgment of acquittal as to all three counts. The trial court dismissed counts 1 and 2 regarding theft from Harris but refused to dismiss count 3 regarding theft from Shrum's Auto Salvage. The jury convicted the appellant. After a sentencing hearing, the trial court sentenced him as a Range IV, career offender to twelve years in confinement and ordered that he serve the sentence consecutively to a prior sentence.

## II. Analysis

The appellant contends that the trial court erred by denying his motion for judgment of acquittal on count 3 and by denying his motion for new trial because the evidence is insufficient to support the conviction. Specifically, the appellant contends that because he had permission to dispose of the truck, he could not have intended to deprive Shrum's "as he would have no way of knowing they would be in danger of not receiving the benefit of their bargain." The State concedes that the evidence is insufficient.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most

favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. <u>Id.</u> Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). "The standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." <u>State v. Thompson</u>, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). "'Effective consent' means assent in fact, whether express or apparent, including assent by one legally authorized to act for another." Tenn. Code Ann. § 39-11-106(a)(9). Relevant to this case, consent is not effective when it is "[i]nduced by deception or coercion." Tenn. Code Ann. § 39-11-106(a)(9)(A).

Count 3 alleged that the appellant committed theft against Shrum's Auto Salvage by taking cash valued between $1,000 and $10,000 without Shrum's effective consent and with the intent to deprive Shrum's of its property. At trial, Harris testified that the appellant had permission to "get rid" of the truck. Although Harris did not intend for the appellant to sell the truck for scrap, he gave the appellant permission to dispose of it. Therefore, the appellant sold the truck to Shrum's while acting on Harris's behalf, and nothing shows that the appellant obtained money from Shrum's without Shrum's effective consent. Harris acknowledged that his story had changed since the appellant's preliminary hearing. However, the State did not question him about any specific discrepancies between his preliminary hearing testimony and his trial testimony. Moreover, the State now concedes that the appellant was in lawful possession of the truck when he sold it to Shrum's. Accordingly, we agree that the evidence is insufficient to support the conviction.

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, the judgment of the trial court is reversed, and the charge against the appellant is dismissed.

_____
NORMA McGEE OGLE, JUDGE