IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2019

**STATE OF TENNESSEE v. JOSHUA RYAN STEELE**

**Appeal from the Criminal Court for Davidson County**
**No. 2018-B-1364    Mark J. Fishburn, Judge**

———————————————————

**No. M2019-00333-CCA-R3-CD**

———————————————————

The Appellant, Joshua Ryan Steele, was convicted of domestic assault and was sentenced to eleven months and twenty-nine days to be served on probation.  On appeal, the Appellant challenges the trial court's denial of his motion for a judgment of acquittal made at the close of the State's proof and the sufficiency of the evidence sustaining his conviction.  Upon review, we affirm the judgment of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

J. Chase Gober, Nashville, Tennessee, for the Appellant, Joshua Ryan Steele.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Deborah Housel, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The twenty-six-year-old Appellant was charged with domestic assault as a result of an altercation he had with his mother, Sherrie Steele, on April 11, 2018.

At a bench trial, Ms. Steele testified that the Appellant was homeless and that in April 2018, she allowed him to stay "off and on" in her apartment on Coreland Drive.  At approximately 1:00 p.m. on April 11, the Appellant said that he needed to get some

clothes from a storage facility at the O.K. Campground in Joelton. He wanted Ms. Steele to drive him to the storage facility and to a Kroger store in Green Hills to buy him a cake because his birthday was the previous day. Ms. Steele had been undergoing chemotherapy and did not feel well enough to drive to Green Hills, but she agreed to drive him to the storage facility.

Ms. Steele said that while she was driving the Appellant to the storage facility, he became angry because she refused to buy the birthday cake. He hit her right arm and her chest with his fist approximately four times. The Appellant also put his hands around her neck and choked her. Afterward, Ms. Steele drove the Appellant to the storage facility because she wanted to get him out of her car. She left him at the storage facility without saying anything to him. She was upset and crying.

Ms. Steele returned home, called a friend, and told the friend what had happened. She did not call the police because the Appellant had been barred from her apartment, and she did not want to get him in trouble. Two days later, on April 13, Ms. Steele went to her mother's house on Shaw Road. Her mother, sister-in-law, and niece saw the bruises on her body, and they convinced her to call the police. A police officer came to her mother's house, and Ms. Steele told him everything that had happened. She showed him the bruises on her right arm and her chest, and he took photographs of the bruises. Ms. Steele did not tell the officer about the choking because she feared the Appellant would be charged with attempted murder, and she did not want to get him "in more trouble." Ms. Steele did not want the Appellant to go to jail, but she thought that he needed help with his mental health issues. She explained that he had "Asperger's, Autism" and that he refused to take his medication, which caused him to become "very aggressive." She said that when he was eighteen years old, he was "in Camelot in North Tennessee" for nine months.

Ms. Steele said that on the Thursday before the trial began,[1] the Appellant, who was still homeless, spent the night at her apartment. While he was in her bedroom, she received a call from the prosecutor, asking if she had received a subpoena. Ms. Steele put her cellular telephone on the couch and went to the lobby to check the mail. When she returned, the Appellant was laughing, and he told her that he had sent text messages from her cellular telephone to his telephone. The Appellant told her that she did not have "much longer to live" and that she should tell the prosecutor she had been lying. Ms. Steele said that she was sixty-three years old, that she had cancer twice, and that she had heart failure. This encounter with the Appellant upset her, and she took a nitroglycerin pill because she thought she was having a heart attack.

---

[1] The Appellant's trial occurred the following Tuesday.

On cross-examination, Ms. Steele asserted that she did not send the Appellant any text messages and that he told her he had deleted the messages he sent. Ms. Steele did not know what the text messages said but thought "[i]t was something about today, going to be in court. He was trying to act like he's innocent when he's guilty."

Ms. Steele said that the Appellant had sent text messages from her cellular telephone to his own telephone on other occasions. She recalled that around Thanksgiving of 2018, the Appellant sent a text message from her telephone to his telephone saying that Ms. Steele had lied about the assault and had the Appellant arrested because he refused to get help. The message further stated that Ms. Steele thought the Appellant needed medication and that she wanted him to "[g]et a life out of mine." Ms. Steele denied sending the text message but acknowledged that she had told the Appellant that she wanted him to "get a life" because she was "tired of being responsible for him."

Ms. Steele said that the Appellant's birthday was April 10 and that the offense happened the day after the Appellant's birthday. She gave the Appellant a card and thirty dollars for his birthday; she did not get him a birthday cake because she did not feel well due to her chemotherapy treatments.

Defense counsel questioned Ms. Steele about her testimony at the preliminary hearing. Ms. Steele agreed she testified at the preliminary hearing that the dispute about the birthday cake was on April 10, not April 11, while she was in her bedroom. Regarding the discrepancy, Ms. Steele explained that the Appellant assaulted her in her apartment and in her car. She also explained that she was "going through chemo" at the time.

On redirect examination, Ms. Steele asserted that she had never lied to "the District Attorney's office." She explained that the Appellant "g[o]t physical with" her before they left the apartment on April 11 and that he hit her again while they were inside her car. She maintained that "the worst of it [was] in the car." She said "there had been friction all day" between them because the Appellant "wanted more than what [she] could give him [for his birthday]."

Officer Michael Quinn with the Metro Nashville Police Department testified that on April 13, 2018, he was called to a residence on Shaw Road to speak with Ms. Steele. He observed "a two to three-inch diameter bruise on the left side of her chest, and she also had a small bruise on the inside of her . . . right arm, and there was also a red mark on the side of her neck." Officer Quinn took photographs of the bruising on Ms. Steele's chest and arm, but she would not let him photograph the bruising on her neck. Ms. Steele said that the Appellant caused the injuries. Ms. Steele told Officer Quinn that the Appellant had put his hands around her neck, but she refused to say anything further

about that specific injury. Officer Quinn surmised that she was concerned about the "serious repercussions" of that injury. Ms. Steele did not want the Appellant to be incarcerated but wanted him to get help for his mental health problems.

On cross-examination, Officer Quinn said that he included in his report everything Ms. Steele told him, including the injuries to her neck.

At the close of the State's case-in-chief, the Appellant moved for a judgment of acquittal based on the inconsistencies in the victim's testimony. The trial court denied the motion. Thereafter, the Appellant testified on his own behalf. The Appellant said that he had been diagnosed with "Asperger's, A.D.H.D." at age thirteen and was given medication. He quit high school two months prior to graduation and was not employed.

The Appellant said that on April 10, 2018, his grandmother, not his mother, gave him a birthday card containing thirty dollars. The Appellant said that he was at Ms. Steele's apartment on April 10 but denied that they had an argument or any type of physical altercation that day. According to the Appellant, Ms. Steele told him around 11:00 p.m. to leave the apartment. She "curs[ed]" him, "put[ him] down," and told him to "get a life." The Appellant left the apartment on foot and hitchhiked to Gallatin where he stayed with his father in a rehabilitation facility for a few days.

Afterward, he went to Sumner Regional Hospital because his cellular telephone was dead, and he knew he could use a telephone at the hospital to call his mother. On April 14, he called Ms. Steele and asked if he could return to her apartment. She refused, explaining that she had called the police and had taken out a restraining order against him. Nonetheless, later that day, she and a friend brought the Appellant some of his clothes. On April 15 or 16, the police arrested the Appellant.

The Appellant said that he received social security disability payments but that he tried "to work some." Although the Appellant maintained he had never had a physical altercation with Ms. Steele, he acknowledged they occasionally argued. The Appellant said that he had never touched Ms. Steele's cellular telephone without her consent and that he had never sent text messages to his cellular telephone from her cellular telephone.

On cross-examination, the Appellant acknowledged that he knew Ms. Steele had suffered heart attacks and that she had been receiving chemotherapy to treat her second bout of cancer. The Appellant said that he had been banned from Ms. Steele's apartment complex since 2012 when he got into an argument with an "office worker" who had his car towed. Nevertheless, he continued to go to Ms. Steele's apartment because he was homeless. The Appellant said that Ms. Steele's failure to get him a birthday card or cake did not hurt his feelings. He maintained that Ms. Steele was "making all this up."

The Appellant admitted that he stopped taking medication for Asperger's because he thought medicine could not treat the condition. He denied that he became more aggressive when he did not take his medication. The Appellant acknowledged that Ms. Steele told him she had bruises, but he denied doing anything to cause the bruises.

The Appellant acknowledged that he was at Ms. Steele's apartment when she received a call from the prosecutor, but he denied telling her to stop the prosecution. He agreed that Ms. Steele told him she was pursuing the charges to stop him from abusing her, but the Appellant denied abusing her.

At the close of the bench trial, the trial court specifically accredited Ms. Steele's testimony and stated that the Appellant's testimony was not credible. The trial court found the Appellant guilty of domestic assault and sentenced him to eleven months and twenty-nine days to be served on probation.

On appeal, the Appellant challenges the trial court's denial of the motion for a judgment of acquittal and the sufficiency of the evidence sustaining his conviction, asserting that Ms. Steele's trial testimony was not credible.

## II. Analysis

Initially, we note that the Appellant contends that the trial court erred by denying his motion for a judgment of acquittal after the close of the State's proof. Generally, a defendant waives his right to appeal a denial of a motion for a judgment of acquittal made at the conclusion of the State's proof when he chooses to put on proof. See State v. Collier, 411 S.W.3d 886, 893 (Tenn. 2013); State v. Jeffrey Wade Osborne, No. M2010-02281-CCA-R3-CD, 2012 WL 1657047, at *3 (Tenn. Crim. App. at Nashville, May 9, 2012) (concluding that a defendant had waived his motion for a judgment of acquittal in a bench trial by presenting proof on his behalf). We conclude that the Appellant has waived his right to appeal the trial court's denial of the motion for a judgment of acquittal. However, the Appellant has not waived his right to appeal the sufficiency of the evidence. See State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000).

On appeal, a jury conviction removes the presumption of the Appellant's innocence and replaces it with one of guilt, so that the Appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The Appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

- 5 -

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). Accordingly, in a bench trial, the trial judge, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). The trial judge's verdict carries the same weight as a jury verdict. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. See State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011).

Tennessee Code Annotated section 39-13-111(b) provides that "[a] person commits domestic assault who commits an assault as defined in § 39-13-101 against a domestic abuse victim." Our code lists several categories of domestic abuse victims, which includes "[a]dults or minors related by blood or adoption." Tenn. Code Ann. § 39-13-111(a)(4). An assault is committed when a person "[i]ntentionally, knowingly or recklessly causes bodily injury to another." Tenn. Code Ann. § 39-13-101(1). "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(3).

In the light most favorable to the State, the proof at trial revealed that on April 11, the Appellant, who was homeless, was staying with Ms. Steele even though he had been banned from her apartment. He asked Ms. Steele to drive him to a storage facility in Joelton to get some of his clothes and to a Kroger store to buy a cake for his birthday. Ms. Steele was not feeling well because of chemotherapy, but she agreed to drive him to the storage facility. She refused to go to the grocery store for the cake. During the drive, Ms. Steele again refused to buy a birthday cake, and the Appellant became upset. He hit Ms. Steele in the right arm and the chest with his fist and choked her with his hands. Following the assault, Ms. Steele drove the Appellant to the storage facility and left him there. Two days later, Ms. Steele's family members saw her bruises and convinced her to

tell the police about the assault. Ms. Steele reported the offense but did not want the Appellant prosecuted because she was afraid he would be charged with attempted murder. Ms. Steele thought the Appellant did not need incarceration but that he needed help for his mental health issues.

The Appellant contends that Ms. Steele's trial testimony was not credible. He maintains that her testimony regarding the date of the offense and where the offense took place at the preliminary hearing was not consistent with her statement to the police and her trial testimony. The trial court accredited Ms. Steele's explanation that some of the inconsistencies could be due to confusion she suffered as a result of chemotherapy. The trial court, as the trier of fact, explicitly found that Ms. Steele was a credible witness and that the Appellant was not a credible witness. This court repeatedly has asserted that determining the credibility of witnesses is "entrusted exclusively to . . . the trier[ ] of fact." State v. Millsaps, 30 S.W.3d 364, 368 (Tenn. Crim. App. 2000). We may not now reconsider the trial court's credibility assessment. See State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000). The evidence was sufficient to establish that the Appellant intentionally struck his mother numerous times on the arm and chest and choked her. We conclude that the evidence adduced at trial was sufficient to sustain the Appellant's conviction.

### III. Conclusion

We affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE