# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs September 11, 2012

## STATE OF TENNESSEE v. ERIC DEMOND McCATHERN

**Appeal from the Criminal Court for Davidson County**
**No. 2009-C-2600     Cheryl Blackburn, Judge**

---

**No. M2011-01612-CCA-R3-CD - Filed November 16, 2012**

---

The defendant was convicted of aggravated burglary, possession of 26 grams or more of cocaine with intent to sell or deliver within 1000 feet of a school zone, and possession of drug paraphernalia and was sentenced to ten years, twenty-five years, and eleven months, twenty-nine days, respectively.  The ten-year and twenty-five-year sentences were ordered to be served consecutively for a total effective sentence of thirty-five years in the Department of Correction, with fifteen years to be served at 100%.  On appeal, the defendant argues that the evidence is insufficient to sustain his possession of cocaine conviction and that the trial court erred in imposing consecutive sentencing.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH, J., concurred in results only and JAMES CURWOOD WITT, JR., J., filed a concurring opinion.

Jason M. Chaffin (on appeal) and Don Himmelberg (at trial), Nashville, Tennessee, for the appellant, Eric Demond McCathern.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Jeff P. Burks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

In August 2009, the defendant was indicted for aggravated burglary, possession of 26

grams or more of cocaine with intent to sell or deliver within 1000 feet of a school zone, and possession of drug paraphernalia. On August 9, 2010, the defendant pled guilty to the aggravated burglary charge and proceeded to trial on the two remaining counts. On August 10, 2010, the trial court declared a mistrial as to all three counts because the jury could not reach a verdict. The case proceeded to trial again in April 2011, and the defendant was convicted of all three counts as charged in the indictment.

At trial, Officer Thomas Spence of the Metropolitan Nashville Police Department testified that he was assigned to the Narcotics Interdiction Unit and on May 23, 2007, he and Officers Jim Hickman and David Hacker went to 1251 Thomas Street around midnight in response to a general complaint of drug activity in the area. He described the area as "a unique location that . . . has had a long history for drugs, narcotics, prostitution. It's a hilltop. It makes it kind of a unique geographical location because it's almost like a castle." The officers parked their vehicle three or four blocks away and "snuck in using the shadows." From his position on a steep hill, Officer Spence saw the defendant and Sean Horton outside of 1251 Thomas Street near the parking lot. A vehicle then pulled into the parking lot which faced Shepard Street. The defendant and Horton immediately approached the vehicle, had a brief conversation with the occupants, and walked around, changing sides. It appeared a drug transaction was taking place. The defendant then went to the corner of the apartment building at 1251 Thomas Street and crawled in a window of a "pitch black," abandoned apartment." After Horton was halfway inside the window, the officers moved in and announced their presence. Horton came out but dropped his shoulder as if he were placing an item onto the windowsill. The officers took Horton to the ground and found a semiautomatic .40 caliber pistol on the windowsill of the apartment. Immediately inside the window, the officers discovered a large amount of crack cocaine, a pair of digital scales, and "a seat, like a plastic stool." After being ordered to come out of the apartment, the defendant exited through a different window toward the parking lot on Shepard Street and was taken into custody.

Officer Spence said there was no electricity in the apartment and no clothes other than a jacket on a chair. The officers found rotted food and feces on the floor. A search of the apartment revealed a large amount of cocaine in the oven and sandwich baggies that had been spread out. Officer Spence identified the property/evidence report he completed and said that the bag containing 25.5 grams of powder cocaine came from inside the window and the bag containing 87.5 grams of crack cocaine came from the oven.

On cross-examination, Officer Spence acknowledged there was no lighting inside the apartment but said there was a street light that shone on the parking lot. He estimated he was approximately twenty meters from the entry window.

Officer David Hacker testified that he was assigned to the Drug Interdiction Unit and was working with Officers Spence and Hickman on the night of May 23, 2007, in the area of 1251 Thomas Street, a "high drug activity area." He followed Officer Spence and saw Horton who was halfway inside a window at 1251 Thomas Street. After Horton was apprehended, Officer Hacker found a handgun on the windowsill which he gave to Officer Hickman. He then positioned himself where he could see the side window of the apartment and saw the defendant looking out that window. He ordered the defendant to come out, and he was taken into custody. The defendant and Horton gave no answer when Officer Hacker asked them what they had been doing in the apartment.

Larry Drake testified that, on May 23, 2007, he owned and managed the eight-unit apartment building located at 1251 Thomas Street. At that time, six of the units were occupied and two were vacant. He identified a photograph of the end unit that faced Shepard Street and said that it was rented at the time, but the renters had not actually moved into it.

Laura Adams, a forensic scientist with the Tennessee Bureau of Investigation, testified that she analyzed the substances recovered in the case and determined that one bag contained 24.5 grams of powder cocaine and the other bag contained 40.4 grams of cocaine base and 41.6 grams of an additional rock-like substance which was not analyzed.

David Kline, employed by the Metropolitan Planning Department, testified that he prepared a map of the area around 1251 Thomas Street which showed that location was within 1000 feet of Johnson School, a metro school.

Lieutenant William Mackall, a nineteen-year veteran of the Metropolitan Nashville Police Department, testified that he supervised the Narcotics Unit and was accepted as an expert in narcotics investigations. He explained that drug dealers often chose a location, such as a hotel, apartment, or abandoned building, "that's at their vantage point on a hill or something where they can see the police . . . coming from all different directions." Based upon his experience, "most drug users walk around with a crack pipe on their person" and as soon as they get the drug, they smoke it, as opposed to drug sellers who usually have larger quantities of drugs and a set of scales. Lieutenant Mackall explained that as a result of the department's increased war on drugs, dealers usually do not carry drugs on their person.

The defendant elected not to testify and rested his case without presenting any proof.

At the conclusion of the sentencing hearing, the trial court sentenced the defendant to ten years for the aggravated burglary conviction, twenty-five years for the cocaine conviction, and eleven months, twenty-nine days for the drug paraphernalia conviction. Finding the defendant to be a professional criminal who had knowingly devoted his life to

criminal acts as a major source of livelihood and an offender whose record of criminal activity was extensive, the court ordered that the aggravated burglary and cocaine sentences be served consecutively, for a total effective sentence of thirty-five years.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant contends that the trial court should have granted his motion for judgment of acquittal because the proof is insufficient to support a finding that he had actual or constructive possession of the cocaine. The State argues that the evidence is sufficient to sustain the conviction, and we agree.

"The standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000); see also State v. Blanton, 926 S.W.2d 953, 957-58 (Tenn. Crim. App. 1996). Thus, the question for this court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Possession of drugs may be constructive as well as actual. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984) (citation omitted). Criminal liability may result from sole possession or joint possession with another person. See State v. Richards, 286 S.W.3d 873, 885-86 (Tenn. 2009).

Viewed in the light most favorable to the State, the evidence showed that experienced narcotics interdiction officers observed the defendant and Horton, in a "high drug activity area," engage in what appeared to be a drug transaction with the occupants of a vehicle. Officers then observed the defendant and Horton enter a vacant apartment located within 1000 feet of a school in which officers found a large amount of crack and powder cocaine, as well as a pair of digital scales. This evidence was sufficient for the jury to infer that the cocaine belonged to the defendant, either solely or jointly with Horton, and that he possessed it with the intent to sell or deliver it in a school zone. We conclude, therefore, that the evidence is sufficient to sustain the defendant's conviction.

## II. Sentencing

The defendant argues that the trial court erred in ordering his sentences to be served consecutively.

Our supreme court explained in State v. Bise, __ S.W.3d __, 2012 WL 4380564, at *16 (Tenn. 2012), that, in reviewing a sentence imposed by a trial court, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." Accordingly, we review the trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at *17.

The trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) applies, including that the defendant is an offender whose record of criminal activity is extensive and that the defendant is a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood. Id. § 40-35-115(b)(1), (2).

The trial court based its findings that the defendant was an offender with an extensive criminal record and a professional criminal on the defendant's presentence report, which reflected that the defendant had no reported source of legitimate income, along with an extensive record that included a number of drug convictions. The record supports these findings. Accordingly, we affirm the order of consecutive sentencing.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE