IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 12, 2014

**STATE OF TENNESSEE v. SHARRON JOY MAYBERRY**

**Appeal from the Circuit Court for Humphreys County**
**No. 12457     George C. Sexton, Judge**

---

**No. M2013-01473-CCA-R3-CD - Filed April 16, 2014**

---

A Humphreys County Circuit Court Jury convicted the appellant, Sharron Joy Mayberry, of simple possession of a Schedule III controlled substance, a Class A misdemeanor, and the trial court sentenced her to eleven months, twenty-nine days suspended to probation and community service. On appeal, the appellant contends that the trial court erred by denying her motion to suppress evidence, that the trial court erred by not giving a missing evidence jury instruction, and that the evidence is insufficient to support the conviction. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Drew W. Taylor (on appeal) and Dawn Kavanagh (at trial), Ashland City, Tennessee, for the appellant, Sharron Joy Mayberry.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Senior Counsel; Dan Mitchum Alsobrooks, District Attorney General; and E. Dani Bryson and Craig Monsue, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

At trial, Agent Ronnie Moran of the Twenty-Third Judicial District Drug Task Force

testified that on April 19, 2012, he went with Agents Chris Freeze and Michael Pate to the appellant's residence on Bradley Road in McEwen, Tennessee, to take the appellant into custody for an issue unrelated to this case. After the agents arrested the appellant, she requested to get her purse out of her home. Agent Moran told Agent Freeze to escort the appellant back into the house to retrieve the purse and then return outside with the appellant. Agent Moran said Agent Freeze did as he instructed and "went through the purse for officer safety" before giving the purse to the appellant. During the search, Agent Freeze retrieved some pills. Agent Moran later transported the pills to the Tennessee Bureau of Investigation (TBI) Crime Laboratory for analysis.

Agent Chris Freeze testified that as an agent with the drug task force, he had attended a number of specialized schools, including "pharmaceutical school which regularly deals in just prescription pills," "meth school," and "all kinds of drug apprehension schools." He acknowledged that on April 19, 2012, he went to the appellant's home with Agents Moran and Pate to arrest the appellant. After the arrest, the appellant requested her purse. Agent Moran told Agent Freeze to go inside the house and get the purse. Agent Freeze said that he and the appellant went into the house and that they "made sure the stove was turned off, that everything was made safe, that her doors were locked, went through the house and made sure her dogs had water and food, we [didn't] know how long she was going to be gone from the house." Then they "came back out and brought the purse along with her." Agent Freeze stated that before he gave the purse to the appellant, he searched it "for officer's safety . . . to make sure there's no kind of illegal contraband or weapons inside." He said he opened the purse and saw "a pill bottle laying on top." He noticed that the bottle contained two different kinds of pills with one kind being significantly larger than the other. He also noticed that the label on the bottle showed that oxycodone had been prescribed to the appellant.

Agent Freeze testified that he opened the bottle and recognized two of the pills as Lortabs. The appellant was unable to provide agent Freeze with a prescription bottle showing that the Lortabs had been prescribed to her. However, she provided him with a prescription bottle showing that Lortab "10s" had been prescribed to Anthony Tarpey, who lived with the her. According to the label on Tarpey's bottle, his Lortab prescription had been filled thirteen days earlier for 120 Lortab ten-milligram pills with instructions to take three pills per day. The bottle should have contained at least sixty Lortabs but was empty. Agent Freeze retrieved the two Lortabs from the appellant's oxycodone bottle and put them into an evidence bag. He did not keep the appellant's oxycodone bottle or Tarpey's Lortab bottle. Agent Freeze identified for the jury the two pills he confiscated and a document showing the TBI Crime Laboratory's examination results. According to the results, the two pills were dihydrocodeinone, a Schedule III controlled substance.

-2-

On cross-examination, Agent Freeze testified that the appellant's oxycodone bottle contained only two Lortabs and that he did not count how many oxycodone pills were in the bottle. He acknowledged that according to a letter written by the appellant's physician, on December 12, 2011, the physician had prescribed 90 Lortab 10s to the appellant to be taken three times per day with no refills. The letter also stated that on February 7, 2012, the physician had prescribed 30 Lortabs, 7.5 milligrams, to the appellant to be taken every eight hours as needed for pain.

At the conclusion of Agent Freeze's testimony, the State announced the following in the jury's presence:

> Your Honor, both parties would stipulate that the marking on the outside of the [two] pills, I believe it says Watson 540, identifies that pill as what would be chemically known as -- what would be known as a lortab pill which is chemically 10 milligrams of dihydrocodone and 500 milligrams of acetaminophen.

The appellant did not present any witnesses, and the jury convicted her as charged of misdemeanor possession of a Schedule III controlled substance. The trial court immediately sentenced her to eleven months, twenty-nine days suspended to probation and one hundred hours of community service.

## II. Analysis

### A. Motion to Suppress

The appellant contends that the trial court erred by denying her motion to suppress the Lortabs found in her purse, arguing that Agent Freeze's warrantless search was not valid as incident to her arrest because the purse was neither on her person nor under her immediate control at the time of the search. The State argues that the trial court properly determined that Agent Freeze's search of the purse was proper because it was incident to the appellant's lawful arrest and necessary to ensure the agents' safety. We agree with the State.

Before trial, the appellant filed a to motion to suppress the evidence found in her purse, claiming that the warrantless search was improper. She also filed a motion to suppress statements she made about the evidence. At the suppression hearing, Agent Freeze testified that on April 19, 2012, he and other agents went to a home on Bradley Road to serve warrants and arrest the appellant and Anthony Tarpey. He said that the residence belonged to the appellant and that Tarpey was "either a live-in boyfriend or he lives there too or is there on and off on occasions." When the agents arrived at the home, the appellant was

inside, and Tarpey was outside "doing some kind of work." Agent Freeze advised the appellant that they had a warrant for her arrest. The agents took her into custody and brought her outside. The State asked if the appellant was handcuffed, and Agent Freeze answered,

> I don't recall if she was right off, most likely she was. I do know that she said that she had some food cooking. I believe she was cooking dinner so she was allowed to turn the stove off, make sure the house was safe, make sure doors and windows and things like that were secure, that her dogs were fed and watered, after that she was brought outside.

Agent Freeze testified that the appellant asked him for her purse. He said that he "didn't have any problem with getting her purse" but that

> before I would let her carry it with her, I was going to do a plain view search to make sure there was no contraband and/or any kind of weapons inside the purse that could cause bodily harm to any of the officers there or even at the jail.

Agent Freeze said he opened the purse and "kind of scanned through it a little bit," looking for weapons. He noticed a pill bottle "on the top inside the purse" and noticed that it contained two different kinds of pills. He asked the appellant about the pills, and she told him the bottle contained prescribed oxycodone. She also told him that the other pills were Lortabs. The label on the bottle was for oxycodone prescribed to the appellant.

On cross-examination, Agent Freeze acknowledged that the agents were serving warrants to arrest the appellant for manufacturing methamphetamine and that he did not see any weapons in the purse. He also acknowledged that the appellant's pill bottle was a standard, amber-colored pill bottle with a white cap and label. He did not collect the pill bottle. Some of the pills in the bottle were larger than the other pills. He stated that oxycodone was a small, tablet-like pill but that Lortab was significantly larger and a different color. Agent Freeze picked up the bottle. He said that he knew from previous experience that the other pills in the bottle were Lortabs and that the appellant told him they were Lortabs.

Agent Moran testified that when the agents arrived at the appellant's home, the appellant came to the front door. The agents explained to her and Tarpey why they were there. While everyone was standing outside, the appellant said she wanted to get her purse. Agent Moran told Agent Freeze to escort the appellant back into the house, get the purse, and return outside. When Agent Freeze and the appellant came outside, Agent Freeze opened the

purse and saw the pill bottle. Two pills in the bottle were not supposed to be there. Agent Freeze asked the appellant what they were, and the appellant told him they were Lortabs.

The trial court overruled the appellant's motion to suppress the evidence, concluding that the warrantless search of the purse was incident to a lawful arrest and that "it's a violation to have two different kinds of pills in the same bottle." However, the trial court suppressed the statement the appellant made to the agents about the pills. Subsequently, the appellant filed a motion to reconsider, which the trial court heard on the morning of trial. The trial court noted that the appellant had asked the agents if she could get her purse and that Agent Freeze "got it at her direction so he didn't create the circumstances of justifying the search of the purse." The trial court found that the agent's searching the purse was incident to a lawful arrest and that Agent Freeze could tell by looking at the bottle that it contained two different kinds of pills. The trial court again denied the motion to suppress the evidence.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution provide protection for citizens against "unreasonable searches and seizures." Generally, a warrantless search is considered presumptively unreasonable and, thus, violative of constitutional protections. However, searches without a warrant may be executed under certain conditions. One of those exceptions is that police officers, incident to a lawful arrest, may execute a warrantless search of the person arrested and the area within the person's immediate control. Chimel v. California, 395 U.S. 752, 762-63 (1969). "A search incident to a lawful arrest is justified by the need to protect the arresting officer and others from harm and the need to prevent the concealment or destruction of evidence." State v. Ingram, 331 S.W.3d 746, 755 (Tenn. 2011).

Turning to the instant case, the appellant does not contest that she was under lawful arrest at the time of the search. Instead, she argues that Agent Freeze's search was not permissible under Chimel because the purse was not within her immediate control. In support of her argument, she refers to Agent Freeze's suppression hearing testimony that she

most likely was in handcuffs after her arrest. Thus, she could not have gained possession of a weapon or destroyed evidence in the purse. She also contends that even if this court concludes that the search of the purse was lawful, Agent Freeze's search of the pill bottle exceeded the scope of Chimel because "[i]t was not until he did a further search into the pill bottle and questioned Ms. Mayberry that he knew exactly what kind of pills they were and who if anyone had a prescription for them."

We conclude that Agent Freeze could search the purse pursuant to Chimel. Although Agent Freeze testified that he thought the appellant was "most likely" in handcuff's after her arrest, he also testified that he allowed her to go into the house to turn off her stove, make sure her doors and windows were locked, and feed and water her dogs. Thus, the appellant probably was not wearing handcuffs when Agent Freeze allowed her to do all those things. In any event, the appellant's wearing handcuffs would not have eliminated the need for the agent to search her purse for weapons for the officers' safety or for evidence before he gave the purse to her. As noted by the trial court, Agent Freeze retrieved the purse at the appellant's request and planned to put it in her possession. Therefore, he was justified in searching the purse pursuant to Chimel before he gave it to her.

Regarding the extent of the search, the appellant contends that Agent Freeze's search exceeded the "narrow scope" of Chimel. We disagree. As this court has explained,

> The search was performed incident to a valid arrest [pursuant to Chimel], thus, the findings of the search are valid as well. The Supreme Court has stated, "It is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."

State v. Avery Q. Walker, No. 01C01-9612-CC-00526, 1998 Tenn. Crim. App. LEXIS 258, at **9-10 (Nashville, Mar. 5, 1998) (quoting Chimel, 395 U.S. at 763). Therefore, we conclude that Agent Freeze could thoroughly search the purse and seize the pills for which the appellant did not have a valid prescription. The trial court properly denied the motion to suppress.

## B. Missing Evidence Instruction

Next, the appellant contends that the trial court erred by refusing to give the jury a missing evidence instruction for the agents' failure to collect the appellant's oxycodone bottle and Tarpey's Lortab bottle. The State argues that it was not required to preserve the bottles because they were not exculpatory evidence, and, therefore, that the requested

instruction was not warranted. We conclude that the trial court properly refused to give the instruction.

At the conclusion of the proof, defense counsel requested that the trial court give a "missing evidence charge." Defense counsel argued that the State had a duty to preserve the appellant's oxycodone bottle because "we don't know how old that prescription was, we don't know if even any of those pills were taken, and that's something that the jury's bound to be thinking about if she's getting prescriptions left and right for pain pills." Defense counsel also argued that the State had a duty to preserve Tarpey's Lortab bottle "because it was empty." Defense counsel advised the court that after Agent Freeze seized the two Lortabs, he put the two pill bottles back into the appellant's purse and that "[w]hat happened to them after that she had no control over." The trial court refused to give the instruction, ruling that the agents had no reason to take the oxycodone bottle because the appellant had a valid prescription for the drug and that they had no reason to take Tarpey's Lortab bottle because Tarpey was not charged with a crime related to the bottle and nothing indicated the bottle had anything to do with the appellant.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution afford every criminal defendant the right to a fair trial. See Johnson v. State, 38 S.W.3d 52, 55 (Tenn. 2001). As such, the State has a constitutional duty to furnish a defendant with exculpatory evidence pertaining to the defendant's guilt or innocence or to the potential punishment faced by a defendant. See Brady v. Maryland, 373 U.S. 83, 87 (1963).

In State v. Ferguson, 2 S.W.3d 912, 915-18 (Tenn. 1999), our supreme court addressed the issue of when a defendant is entitled to relief in the event the State has lost or destroyed evidence that was alleged to have been exculpatory. The court explained that a reviewing court must first determine whether the State had a duty to preserve the lost or destroyed evidence. Ferguson, 2 S.W.3d at 917. Ordinarily, "the State has a duty to preserve all evidence subject to discovery and inspection under Tenn. R. Crim. P. 16, or other applicable law." Id. However,

> "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

-7-

Id. (quoting California v. Trombetta, 467 U.S. 479, 488-89 (1984)).

If the proof demonstrates the existence of a duty to preserve the evidence and further shows that the State has failed in that duty, a court must proceed with a balancing analysis involving consideration of the following factors:

> 1. The degree of negligence involved;
>
> 2. The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and
>
> 3. The sufficiency of the other evidence used at trial to support the conviction.

Id. (footnote omitted). If the court's consideration of these factors reveals that a trial without the missing evidence would lack fundamental fairness, the court may consider several options such as dismissing the charges or providing an appropriate jury instruction, often referred to as a "missing evidence" instruction. See id. at n.11; see Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 42.23 (16th ed.).

Turning to the instant case, we conclude that the trial court properly refused to give the instruction. Agent Freeze did not collect the bottles as evidence but returned them to the appellant. The appellant has offered no explanation for what happened to the bottles after the agent returned them to her. However, she did not allege at trial and does not allege on appeal that the State later collected and lost or destroyed the bottles. Therefore, given that the bottles were returned to her possession, "the evidence was not of such a nature that the appellant would be unable to obtain comparable evidence by other reasonably available means," and a missing evidence instruction was not warranted.

## C. Sufficiency of the Evidence

Finally, the appellant contends that the evidence is insufficient to support the conviction because a doctor had prescribed the same dosage of Lortabs to her on December 2, 2011, and she could have been carrying pills left over from that prescription in her oxycodone bottle. The State argues that the evidence is sufficient because the jury rejected that theory and "made the logical inference that . . . the defendant was carrying Lortab pills from Mr. Tarpey's prescription inside her oxycodone pill bottle." We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard

for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. <u>Id.</u> Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. <u>State v. Hall</u>, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" <u>State v. Rice</u>, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting <u>State v. Marable</u>, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" <u>State v. Dorantes</u>, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting <u>State v. Hanson</u>, 279 S.W.3d 265, 275 (Tenn. 2009)). Moreover, "[t]he standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." <u>State v. Thompson</u>, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000).

"Simple possession" is defined as the knowing possession or casual exchange of a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice. Tenn. Code Ann. § 39-17-418(a). Dihydrocodeinone is a Schedule III controlled substance. <u>See</u> Tenn. Code Ann. § 39-17-417(e)(1); <u>State v. Robert Pruitt</u>, No. W2010-02269-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 202, at *31 (Jackson, Mar. 6, 2013) (holding that certain kinds of dihydrocodeinone, such as Lortab, are Schedule III controlled substances). The offense in this case is a Class A misdemeanor. <u>See</u> Tenn. Code Ann. § 39-17-418(c).

Initially, we note that the appellant has failed to include in the appellate record the

parties' closing arguments in which the State would have presented its theory of the case. In any event, taken in the light most favorable to the State, the evidence shows that Agent Freeze looked in the appellant's purse and saw her pill bottle containing two different kinds of pills. Agent Freeze opened the bottle and recognized two of the pills as Lortabs, but the prescription label on the bottle was for oxycodone. The Lortabs in the bottle turned out to be Lortab 10s. Although the appellant's doctor had prescribed a thirty-day supply of Lortab 10s to her, the doctor wrote the prescription more than four months prior to Agent Freeze's discovery of the two Lortab 10s in the appellant's oxycodone bottle. Moreover, although the trial court had ruled that the appellant's statement about the pills being Lortabs was inadmissible, Agent Freeze was allowed to testify, without any objection from the defense, that when he questioned the appellant about the Lortabs, she showed him Tarpey's Lortab 10s bottle. Thus, we conclude that a reasonable jury could have inferred that the appellant obtained the Lortab 10s from Tarpey. The evidence is sufficient to support the conviction.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

 

_____
NORMA McGEE OGLE, JUDGE