IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 14, 2019

**STATE OF TENNESSEE v. KENNETH LLOYD HILL**

**Appeal from the Criminal Court for Davidson County**
**No. 2017-B-1385    Angelita Blackshear Dalton, Judge**

_____

**No. M2019-00032-CCA-R3-CD**

_____

The Appellant, Kenneth Lloyd Hill, was convicted in the Davidson County Criminal
Court of possessing a firearm while having a prior conviction for a felony involving the
use or attempted use of force, violence, or a deadly weapon, a Class C felony, and the
trial court sentenced him as a Range III, persistent offender to fifteen years in
confinement.  On appeal, the Appellant contends that the trial court erred by refusing to
sever the offense from the remaining offenses for which he was on trial and that the trial
court committed various sentencing errors.  Based upon the record and the parties' briefs,
we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN
and J. ROSS DYER, JJ., joined.

Melissa Bourne (on appeal) and Timothy Carter (at trial), Nashville, Tennessee, for the
appellant, Kenneth Lloyd Hill.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior
Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jennifer
Charles and David Jones, Assistant District Attorneys General, for the appellee, State of
Tennessee.

**OPINION**

**I.  Factual Background**

In June 2017, the Davidson County Grand Jury returned a nine-count indictment,
charging the Appellant with the aggravated assaults of Delores Ferguson-Hill, Letikka

Finney, Witness A, and Witness B in counts one through four, respectively[1]; interfering with a 911 call in count five; driving under the influence (DUI) in count six; DUI per se in count seven; possession of a handgun while under the influence in count eight; and possession of a firearm after having been convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon in count nine. Before trial, the State dismissed counts two, three, four, six, seven, and eight and renumbered the remaining counts. In May 2018, the Appellant went to trial for the aggravated assault of Delores Ferguson-Hill in count one; interfering with a 911 call in count two; and possession of a firearm after having been convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon in count three.

Delores Ferguson-Hill testified that at the time of trial, she and the Appellant had been married twenty-five years but were in the process of divorcing. In March 2017, Ferguson-Hill and the Appellant were living in their home on Panorama Drive. Ferguson-Hill's thirty-five-year-old daughter, Letikka Finney, and Ferguson-Hill's two granddaughters, Witness A and Witness B, who were fourteen and eight years old, respectively, lived with them. On March 7, Ferguson-Hill went to work about 2:00 p.m. At that time, the Appellant was at home, Finney was at work, and Witness A and Witness B were at school. About 8:30 p.m., Ferguson-Hill received a telephone call from one of her granddaughters and returned home. The Appellant appeared to be intoxicated "a little bit" and angry, so Ferguson-Hill went into their bedroom to avoid a confrontation with him. The Appellant came into the room and pushed Ferguson-Hill, so she went into her granddaughters' bedroom to get them and leave the residence. The Appellant went into the living room and put a handgun to his head. Ferguson-Hill said that she had never seen the gun prior to that night and that she was in "total shock."

Ferguson-Hill testified that the Appellant came toward her and pointed the gun at her. Finney grabbed the Appellant's hand, and the three of them started "wrestling and tugging" over the gun. They ended up in the children's bedroom and fell onto Witness B's bed. During the melee, Finney tried to call 911 with her cellular telephone, but the Appellant took the telephone away from her. The three of them continued wrestling, and the Appellant said, "'Let me go. I'm not going to hurt anybody in here. I just want to get out of here.'" Ferguson-Hill said the Appellant "jumped up" and ran out the front door. Her car was blocking his car, so she moved her car in order for him to drive away. Ferguson-Hill called 911, and the State played the call for the jury.

On cross-examination, Ferguson-Hill testified that at the time of the incident, the Appellant was employed at a Krystal's restaurant. She said, though, that he had worked

---

[1] It is the policy of this court to refer to minor witnesses by their initials. However, because the two witnesses have the same initials, we will refer to them as Witness A and Witness B.

there "90 days, maybe"; that he had not been employed for years prior to obtaining the job; and that she was the "breadwinner." After the incident on March 7, 2017, Witness A had a "breakdown" and went to live at Inner Harbour, a residential treatment facility in Atlanta. She was still living there at the time of the Appellant's trial. Ferguson-Hill acknowledged that the Appellant suffered from diabetes and high blood pressure.

Officer Victor Alexander of the Metropolitan Nashville Police Department (MNPD) testified that on March 7, 2017, he and his partner responded to a call on Panorama Drive and arrived at 10:19 p.m. He saw the Appellant's car and ordered the Appellant to stop. The Appellant did so, and Officer Alexander handcuffed him through the driver's window. The officer said that he got the Appellant out of the car and that the Appellant was "upset" and "intoxicated." As the Appellant was getting out of the car, a handgun fell out of his right front pocket.

Officer Alexander testified that he drove the Appellant to the Appellant's residence on Panorama Drive, had the Appellant sign a waiver of rights form, and spoke with the Appellant. Officer Alexander asked if the gun belonged to the Appellant, and the Appellant said no. Officer Alexander asked where the Appellant got the gun, and the Appellant answered, "My house." The Appellant claimed he did not know who owned the gun. Officer Alexander asked if the Appellant was a convicted felon, and the Appellant said yes. At that point in the testimony, the State read a stipulation to the jury regarding the Appellant's having a prior conviction for a felony involving the use or attempted use of force, violence, or a deadly weapon.

On cross-examination, Officer Alexander testified that Ferguson-Hill was "angry" and had torn clothes. The Appellant smelled of alcohol, and Officer Alexander noted on the waiver of rights form that the Appellant was intoxicated. Officer Alexander said that the Appellant was "angry," "talkative," and "mostly rambled" but that the Appellant did not resist arrest. The handgun was loaded and had one round in the chamber.

Officer Nathaniel Myers of the MNPD testified that he responded to the scene with Officer Alexander and that they "rushed the window" of the Appellant's car because dispatch had reported a gun was involved. The officers handcuffed the Appellant through the window and got him out of the car. As the Appellant was stepping out, a loaded forty-five-caliber handgun fell onto the floorboard. Officer Myers said that he smelled alcohol on the Appellant's breath and that the Appellant was "intoxicated, very upset, both at us and the legal system in general."

On cross-examination, Officer Myers testified that he and Officer Alexander stopped the Appellant "[s]everal houses down" from the Appellant's residence. Officer Myers did not talk to anyone else on the scene and did not know what happened inside

the Appellant's home.  At the conclusion of Officer Myers's testimony, the State rested its case.

Witness B testified that she was nine years old, that she was in the third grade, and that the Appellant was her grandfather.  On March 7, 2017, Witness B was living with her grandmother, Ferguson-Hill; the Appellant; her sister, Witness A; and her aunt, Finney.  That night, Ferguson-Hill was arguing with the Appellant.  Witness B said the Appellant "got his gun" and "just started saying things."  He pointed the gun at his head and then pointed the gun at Finney.  Witness B said that the Appellant was "acting like he was going to shoot" Finney but that he "really didn't."  Everyone ended up in Witness B's bedroom, and Ferguson-Hill tried to get the gun out of the Appellant's hand so he would not harm anyone.  The Appellant left the room and got his car keys, and Ferguson-Hill telephoned the police. Witness B said that everyone was yelling and that she was scared during the incident.

At the conclusion of the proof, the jury was unable to reach a verdict regarding the aggravated assault of Ferguson-Hill in count one, and the trial court declared a mistrial as to that count.[2]  The jury found the Appellant not guilty of interfering with a 911 call in count two but convicted him of possessing a firearm while having a prior conviction for a felony involving the use or attempted use of force, violence, or a deadly weapon in count three, a Class C felony.[3]

## II.  Analysis

### A.  Motion to Sever

The Appellant contends that the trial court erred by denying his motion to sever count three from counts one and two.  The State argues that the Appellant has failed to show that he suffered any prejudice from the trial court's denial of the motion.  We agree with the State.

Before trial, the Appellant filed a motion to sever the charge of possessing a firearm while having a prior conviction for a felony involving the use or attempted use of force, violence, or a deadly weapon from the remaining charges.  In the motion, the Appellant acknowledged that "separation of [the] issues would be complicated for the jury" but argued that he would be prejudiced by the jury's hearing about his criminal history.  At a hearing on the motion, the State advised the trial court that joinder of the

---

[2] The State later dismissed count one.

[3] The offense is now a Class B felony.  See Tenn. Code Ann. § 39-17-1307(b)(1)(a), (b)(2) (2018).

offenses was mandatory. The State also advised the trial court that it was opposed to bifurcation of the trial as to count three and that the Appellant had two choices: (1) stipulate to having a prior qualifying felony conviction or (2) the State would introduce certified copies of judgments of conviction for armed robbery into evidence at trial. Defense counsel responded that the Appellant was not willing to stipulate to the qualifying felony conviction at that time. The trial court denied the motion to sever without any explanation and did not rule on the bifurcation issue.

Before jury selection on the first day of trial, the State asked defense counsel if the Appellant was going to stipulate to having a prior qualifying felony conviction. The State noted that the Appellant did not have to stipulate. The trial court stated that the stipulation would be "beneficial" to the Appellant, but defense counsel responded that the stipulation would be prejudicial "on its face." The record reflects that defense counsel conferred briefly with the Appellant. Thereafter, defense counsel advised the trial court that the Appellant would agree to the stipulation, and the trial court noted that the stipulation "makes the motion to preclude bifurcation moot." During the trial, the State read the following stipulation to the jury: "Defendant in this case, Kenneth L. Hill, has [a] prior qualifying felony conviction involving the use [or] attempted use of force, violence or a deadly weapon."

Tennessee Rule of Criminal Procedure 8(a)(1) provides as follows:

Two or more offenses shall be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or the offenses consolidated pursuant to Rule 13, if the offenses are:

(A) based on the same conduct or arise from the same criminal episode;

(B) within the jurisdiction of a single court; and

(C) known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment(s), or information(s).

The Advisory Commission Comments to the Rule explain that "[t]his rule is designed to encourage the disposition in a single trial of multiple offenses arising from the same conduct and from the same criminal episode, and should therefore promote efficiency and economy." Tenn. R. Crim. P. 8, Advisory Comm'n Cmts. Nevertheless, if the offenses were mandatorily joined, the State or the defendant may move for a severance before trial, and the trial court must grant the motion if "the court finds a severance appropriate

to promote a fair determination of the defendant's guilt or innocence of each offense." Tenn. R. Crim. P. 14(b)(2)(A). A trial court's rulings regarding consolidation or severance under Tennessee Rules of Criminal Procedure 8(b) and Rule 14 are reviewed for an abuse of discretion. State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999).

In this case, all three of the charges resulted from the same criminal episode, i.e., the incident inside the house. In its closing argument, the State asserted that the proof supported a conviction for count three, in part, because Ferguson-Hill and Witness B testified that they saw the Appellant in possession of the gun during his altercation with Ferguson-Hill and Finney. On appeal, the Appellant acknowledges that the three charges were part of the same criminal episode. Accordingly, joinder of the offenses was mandatory.

A trial court's denial of a motion to sever filed pursuant to Rule 14(b)(2)(A) "will not be reversed unless the [defendant] was prejudiced by the decision to try the charges together." State v. Thompson, 88 S.W.3d 611, 614 (Tenn. Crim. App. 2000). The Appellant contends that although he was not prejudiced by the trial court's failure to grant his severance motion as to counts one and two because the jury did not convict him of those offenses, he was prejudiced as to count three because the trial court's failure to grant the motion forced him to stipulate to an essential element of the offense. We disagree with the Appellant.

At the time of the offense, Tennessee Code Annotated section 39-17-1307(b)(1)(A) (2014) provided that it was unlawful for a person to possess a firearm if the person "[h]ad been convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon[.]" Therefore, the State was required to prove that the Appellant had a prior conviction for a qualifying felony and could have introduced evidence of the Appellant's prior convictions of armed robbery. Instead, the State offered to allow the Appellant to stipulate to the qualifying felony conviction so that the jury would not learn the specific conviction. A stipulation is an agreement "which is entered into mutually and voluntarily by the parties." Overstreet v. Shoney's, Inc., 4 S.W.3d 694, 701 (Tenn. Ct. App. 1999). We note that "when the sole purpose of introducing evidence of a defendant's prior convictions is to prove the status element of the offense, and when the defendant offers to stipulate his status as a felon, the probative value of the evidence is, as a matter of law, outweighed by the risk of unfair prejudice." State v. James, 81 S.W.3d 751, 762 (Tenn. 2002). Here, the Appellant voluntarily agreed to the stipulation so that the jury would not hear about his prior convictions of armed robbery. Therefore, we agree with the State that the Appellant has failed to demonstrate that he was prejudiced by the mandatory joinder of the offenses.

B. Sentencing

The Appellant raises various sentencing issues regarding the length and manner of service of his sentence. The State argues that the trial court properly sentenced the Appellant. We agree with the State.

At the Appellant's sentencing hearing, Phelisha Morris testified that the Appellant was her uncle, that he used to work at the Krystal's restaurant in Goodlettsville, and that he had a "really good" relationship with Witness A and Witness B. Morris acknowledged that Witness A had "some issues" and was "difficult to get along with at times." Nevertheless, the Appellant "still loved" Witness A. Morris said that the Appellant was a "great" grandfather and that he "would do the world" for his granddaughters. The Appellant was a Jehovah's Witness and attended meetings on a weekly basis.

On cross-examination, Morris acknowledged that Witness A was still living in Atlanta at the time of the sentencing hearing but said that she did not think Witness A was in Atlanta as a result of the incident on March 7, 2017. On redirect examination, Morris acknowledged that Witness A had "significant behavioral issues" prior to March 7, 2017.

The sixty-six-year-old Appellant testified that he had had "a whole lot of traumatic experiences" in his life. In 1973, the Appellant's sister was fatally shot at work by her husband. The Appellant's father was shot by his roommate while he was sleeping, and the Appellant's nephew was shot and killed while he was sitting in a car. The Appellant said that the death of his sister in 1973 "changed some things" about him and that he ended up in prison.

The Appellant testified that while he was in prison, his wife began a relationship with another man. The Appellant said that the man had killed two people and that he and the man "crossed paths" in prison. At the time of the incident in this case, the Appellant's wife was still seeing the man, and the man would come to the Appellant's house. The Appellant said he possessed the handgun on March 7, 2017, because he was afraid of the man.

The Appellant testified that Witness A had been experiencing some "emotional things" prior to March 7, 2017, and that the incident on March 7 "caused her to have a setback." He said that his relationship with Witness A was good but that "other family members tried to make it not be good." He said that Witness B loved him and that he took his granddaughters to church with him sometimes.

The Appellant testified that he was treated at the "V.A." for mental health issues. He also had prostate cancer and rheumatoid arthritis and needed hip replacement surgery. On cross-examination, the Appellant acknowledged that he was on parole when he committed the offense in this case.

The State introduced the Appellant's presentence report into evidence. According to the report, the Appellant served two years in the Navy during the Vietnam War and received an honorable discharge. He obtained his GED in 2002 and received some college credits. In an addendum to the presentence report, the Appellant described his physical health as "between fair and poor," said that he had been physically disabled since 2011, and said that he suffered from prostate cancer and rheumatoid arthritis. He stated that he received treatment at the "V. SA. Nashville Campus" from 2015 to 2017 because family members said he was delusional and that he was discharged when he was arrested in this case. The Appellant said he received treatment at the V.A. Mental Health Hospital in Murfreesboro in March and April 2016 because his wife said he was hallucinating about people trying to kill him. He also received mental health treatment at Centennial Mental Health Ward. The Appellant stated, though, that he had never been mentally disabled and that his mental issues were the result of "'man-made problems.'" The Appellant reported that he had worked at Honey Baked Ham, R&M Sealing, Labor Smart, Goodwill Industries, and Krystal, but the investigating officer did not verify his employment.

The State introduced certified copies of the Appellant's judgments of conviction into evidence. The judgments reflected four convictions in Tennessee for armed robbery, two convictions in Kentucky for armed robbery, one conviction in Tennessee for being a felon in possession of a weapon, and two convictions in Kentucky for escape. The State argued that based on the convictions, the Appellant qualified as a career offender.

The Appellant introduced several exhibits into evidence, including a letter from the General Manager at the Krystal restaurant in Goodlettsville, stating that the Appellant was "a very good and responsible employee," and reports from forensic psychologists Dr. Kimberly Brown and Dr. Julie Gallagher. According to Dr. Brown's April 5, 2017 report, she performed a pretrial court-ordered psychiatric evaluation of the Appellant and diagnosed him with delusional disorder and alcohol use disorder. However, she concluded that the evidence did not show he was unable to appreciate the nature or wrongfulness of his conduct due to mental illness at the time of the offenses. She also concluded that he understood the charges against him and the potential penalties, could communicate with his attorney, and had the ability to assist with his defense. Accordingly, she concluded that he was competent to stand trial and that his mental state at the time of the alleged offenses did not support an insanity defense.

According to Dr. Gallagher's May 11, 2018 report, she conducted a pretrial evaluation of the Appellant at defense counsel's request to determine if the Appellant was competent to proceed with trial and to determine if any mental health factors were present that could be relevant at sentencing. In the report, she noted that the Appellant's medical records showed that he was admitted to Parthenon Pavilion at Centennial Medical Center in June 2014 and diagnosed with "Psychotic Disorder, Not Otherwise Specified." In March 2016, he was admitted to a psychiatric unit "at the VA" and diagnosed with "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder." The Appellant continued to receive outpatient psychiatric treatment and was diagnosed with Delusional Disorder when he was last seen at the V.A. in 2018. Dr. Gallagher administered psychological tests to the Appellant. She concluded that he experienced paranoid delusions but that the evidence did not show his delusional beliefs interfered with his ability to understand the legal system or communicate with defense counsel. She said she had "no concerns" about his competency at that time. Relevant to sentencing, Dr. Gallagher concluded that the Appellant had had "significant mental health problems since 2014" and that his most appropriate diagnosis was Delusional Disorder. She concluded that at the time of the offenses, the Appellant was suffering from the delusional belief that his life was in danger from gang members, which caused him to carry a firearm, and that he was "experiencing significant emotional turmoil regarding his relationship with his wife and stepdaughter."

In a written sentencing order, the trial court agreed with the State that the Appellant qualified as a career offender. The trial court did not address enhancement or mitigating factors but sentenced him to fifteen years, the maximum punishment in the range for a Class C felony. Regarding the manner of service of the sentence, the trial court stated that the Appellant "has faced more than his fair share of hardships in life, and the Court is not without sympathy as to those hardships and how those circumstances impacted [his] life." However, the trial court concluded that due to his extensive criminal history, confinement was necessary to protect society by restraining a defendant who has a long history of criminal conduct. The trial court also concluded that the facts of this case were "egregious" and, therefore, that confinement was necessary to avoid depreciating the seriousness of the offense and particularly suited to provide an effective deterrence to others likely to commit similar offenses. Finally, the trial court noted that measures less restrictive than confinement had been unsuccessfully applied to the Appellant. Therefore, the trial court ordered that he serve his fifteen-year sentence in the Tennessee Department of Correction.

The Appellant filed a motion to correct an illegal sentence pursuant to Tennessee Rule of Criminal Procedure 36.1, arguing that one of the prior convictions the State relied on to argue he was a career offender, namely a 1977 Kentucky conviction for armed robbery, was overturned by the Court of Appeals of Kentucky. In a written order, the

trial court agreed with the Appellant and resentenced him a Range III, persistent offender. The trial court found the following enhancement factors applicable to the Appellant's sentence: (1) "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"; (3) "[t]he offense involved more than one (1) victim"; (8) "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community"; (10) "[t]he defendant had no hesitation about committing a crime when the risk to human life was high"; and (13) at the time the felony was committed, the defendant was on parole. Tenn. Code Ann. § 40-35-114(1), (3), (10), (8), (13)(B). The trial court stated that it found no mitigating factors applicable. The trial court said that it was "extremely concerned about the serious nature of the offense" and found that the circumstances of the offense were "egregious" because the Appellant possessed a firearm while he was intoxicated and while he was involved in a domestic violence dispute. The trial court again sentenced the Appellant to fifteen years in confinement.

This court reviews the length, range, and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In determining a defendant's sentence, the trial court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the Appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343 (quoting Tenn. Code Ann. § 40-35-210(d)). Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

First, the Appellant contends that the trial court erred by applying enhancement factor (3), that the offense involved more than one victim, because none of his family members were a "victim" as this court has defined the term. In support of his argument, he relies on State v. Raines, 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994), in which this court stated that a "victim" as used in enhancement factor (3) "is limited in scope to a person or entity that is injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime." He also contends that there is no "victim" in the crime of possession of a weapon by a convicted felon because the crime is classified as an offense against public health, safety, and welfare. The State argues that even if the trial court erred, the court's proper application of the other enhancement factors supports the Appellant's fifteen-year sentence. We agree with the State. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed . . . . So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Bise, 380 S.W.3d at 706. The Appellant does not contest the trial court's application of the other four enhancement factors. Therefore, even if the trial court erred, the remaining enhancement factors justify the Appellant's fifteen-year sentence

The Appellant also contends that the trial court erred by failing to consider any mitigating factors. He asserts that while the trial court made the "perfunctory statement" that it found no mitigating factors applicable, the trial court did not mention which factors it considered or explain why they did not apply. The Appellant argues that the trial court

should have applied mitigating factor (8), that he was suffering from a mental condition that significantly reduced his culpability for the offense, because the record demonstrates that he has an extensive history of mental illness and was under significant duress at the time of the crime. In support of his argument, he refers to Dr. Gallagher's report. However, Dr. Brown's report contradicted Dr. Gallagher's report in that Dr. Brown concluded as follows:

> By available accounts, Mr. Hill was drinking that day and noted to be intoxicated by both his wife and the arresting officer. Mr. Hill attempted to attribute blame to his wife by stating she first pointed a gun at him. He indicated during the evaluation that his actions were a plea for validation, as he was concerned that his family did not care about him. While he has a history of delusional beliefs, these did not appear to lead to the alleged offenses or impair his appreciation of the wrongfulness of his alleged actions.

We note that the voluntary use of intoxicants does not fall within the purview of factor (8). See Tenn. Code Ann. § 40-35-114(8). Therefore, we cannot conclude that the trial court erred by failing to apply the mitigating factor.

Next, the Appellant contends that the trial court erred by denying his request for an alternative sentence because the trial court failed to consider his potential for rehabilitation and incorrectly applied the factors of seriousness of the offense and deterrence. He asserts that while the State may argue that he was ineligible for alternative sentencing because the offense involved possession of a weapon, the trial court could have considered alternative sentencing under the special needs exception.

A defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). Moreover, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). In this case, the Appellant was convicted of a Class C felony, but his sentence was fifteen years. Therefore, he was ineligible for probation. See Tenn. Code Ann. § 40-35-303(a).

As for community corrections, we note that the Community Corrections Act of 1985 was enacted to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103(1). Tennessee Code Annotated section 40-36-106(a)(1) provides that an offender who meets all of the following minimum criteria shall be considered eligible for community corrections:

- 12 -

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F) Persons who do not demonstrate a pattern of committing violent offenses.

When determining a defendant's suitability for alternative sentencing, courts should consider whether the following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), are applicable:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

In its first sentencing order, the trial court specifically addressed the sentencing considerations in Tennessee Code Annotated section 40-35-103(1) and found that all

- 13 -

three of them were applicable. Moreover, the Appellant was convicted of a felony offense in which the possession of a weapon was involved, and he has numerous prior convictions for armed robbery, demonstrating a past pattern of behavior indicating violence. Therefore, he does not meet the minimum criteria for community corrections under Tennessee Code Annotated section 40-36-106(a)(1).

When a defendant does not meet the minimum criteria for community corrections under Tennessee Code Annotated section 40-36-106(a)(1), the defendant may still be eligible for community corrections under Tennessee Code Annotated section 40-36-106(c), the "special needs" exception. The special needs exception allows a defendant "who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community" to be eligible for community corrections. Tenn. Code Ann. § 40-36-106(c). However, this court has previously concluded that a defendant must be eligible for probation to qualify for community corrections under the special needs provision of subsection (c). State v. Grigsby, 957 S.W.2d 541, 546 (Tenn. Crim. App. 1997). Because the Appellant's fifteen-year sentence renders him ineligible for probation, he is not eligible for community corrections.

Finally, the Appellant contends that the trial court erred by concluding that it had no authority to influence his serving his sentence in a special needs prison. At the hearing on the Appellant's motion for new trial, defense counsel requested that the Appellant not be returned to the prison where he was currently housed because he feared for his safety. The trial court responded, "And I have actually looked into this on another matter and the Court has no authority to address matters of housing with the Department of Corrections. That is just beyond my authority." As noted by the Appellant, trial courts have recommended that a defendant serve his or her sentence in a special needs prison. See State v. Nathaniel A. Rhodes, No. M2018-00136-CCA-R3-CD, 2019 WL 4052535, at *7 (Tenn. Crim. App. at Nashville, Aug. 28, 2019); Timothy Richard Singleton v. State, No. M2015-02319-CCA-R3-PC, 2016 WL 6069231, at *1 (Tenn. Crim. App. at Nashville, Oct. 17, 2016); Clarence Tyrone Pruitt v. State, No. W2015-02133-CCA-R3-PC, 2016 WL 5667509, at *1 (Tenn. Crim. App. at Jackson, Sept. 30, 2016); State v. Mandricuss Lashon Robertson, No. M2015-01935-CCA-R3-CD, 2016 WL 4202862, at *5 (Tenn. Crim. App. at Nashville, Aug. 9, 2016). As noted by the State, though, "The commissioner of correction has the discretion to determine the institutional location of inmates within the various security classifications." Tenn. Code Ann. § 41-1-403. Therefore, we agree with the State that while the trial court may have made a recommendation that the Appellant serve his sentence in a special needs prison, the trial court did not have the authority to order that he do so. Accordingly, he has failed to demonstrate prejudice.

## III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE